Syllabus.

## Staunton.

### LANDON LOWRY, TRUSTEE, ET ALS. V. C. W. GILLS, ET ALS.

September 17, 1925.

1. MORTGAGES AND DEEDS OF TRUST—*Deeds of Trust for Benefit of Creditors—Solvent Grantor—Grantor's Right to Alienate Part of Property Covered by Deed of Trust—Case at Bar.*—A solvent grantor conveyed all his real and personal property to a trustee for the benefit of and payment of his creditors. The trustee was authorized to hold the property if he thought a better price could be obtained thereby, but not for a longer period than twelve months. The deed of trust further provided that after the payment of all grantor's debts the surplus should be turned over to the grantor. Afterwards the grantor sold part of the property covered by the deed of trust to complainants.

   *Held:* That the grantor had a beneficial interest in the property conveyed by the deed of trust and his contract of sale with complainants was valid and binding upon him where there was a surplus after the payment of all the debts. Complainants, in good conscience and equity, took the place of the grantor as to ownership of the subject of the sale.

2. MORTGAGES AND DEEDS OF TRUST—*Assignment for Benefit of Creditors—Distinction as to Rights of the Grantor with Reference to the Subject-Matter of the Trust—Equity of Redemption.*—There is a distinction as to the rights of a grantor with reference to the subject-matter of the trust in an ordinary deed of trust to secure a debt, and the trust subject in a general deed of assignment, to pay creditors. In an ordinary deed of trust or mortgage the grantor continues the real owner and may sell and deal with the mortgaged premises as owner. His equity of redemption is descendible by inheritance, devisable by will, and alienable by deed. But under an assignment for benefit of creditors where the grantor is insolvent the grantor has no such powers. But where the grantor is solvent a deed of trust for the benefit of his creditors, the surplus to be returned to him, is governed in this respect by the rule applying to ordinary deeds of trust and not by the rule applying to assignment of benefit of creditors.

3. MORTGAGES AND DEEDS OF TRUST—*Grantor Selling Part of Property—Estoppel—Case at Bar.*—Where a solvent grantor deeded all his property to a trustee to pay his creditors and return the surplus to him and afterwards sold part of the property covered by the deed of trust, he is estopped in equity and good conscience, after his creditors are paid in full, to claim that he had no authority to sell the property in question to the injury of a third party who made the contract of sale with him in good faith. If such a purchaser's rights conflict with the rights of the grantor's creditors, they fall, but after the payment of the debts the trustee holds for the benefit of the grantor and those holding under him.

4. MORTGAGES AND DEEDS OF TRUST—*Subsequent Sale of Part of the Property by Grantor—Specific Performance—Jurisdiction of Equity.*—Where a solvent grantor deeded all his property to a trustee to pay his creditors and return the surplus to him, and afterwards sold a part of the property conveyed to the trustee to complainants, as the grantor would have had a right to come into equity and have his trust executed and his equity of redemption protected, complainants as his assignees had that right also. Complainants' rights were equitable, they having notice of the deed of trust. Complainants' remedy was not by an action for breach of contract against the grantor as the grantor had no legal title to the property.

5. EQUITY—*Jurisdiction—Settling all Questions.*—A chancery court having once properly acquired jurisdiction of all the parties and control of all the assets has jurisdiction to settle all questions in controversy.

Appeal from a decree of the Circuit Court of Bedford county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Landon Lowry* and *S. S. Lambeth, Jr.,* for the appellants.

*Hunter Miller* and *Burnett Miller,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

On June 5, 1920, J. H. Arrington conveyed to Hunter Miller and S. S. Lambeth, Jr., trustees, a tract of land

in Bedford county, Va., containing 120.84 acres, to secure the payment of three negotiable notes for $2,-968.00 each.

On November 9, 1920, he and his wife, Mollie A. Arrington conveyed to S. S. Lambeth, Jr., trustee, the lands conveyed by the above mentioned deed, and all other real and personal estate of which he was seized and possessed (with certain reservations, not material here), including a large quantity of canned tomatoes, 7,500 cases, in Arrington's cannery.

The deed provided that the trustee should take charge and possession of all property conveyed, in person, or by his agent or agents, and dispose of same at public or private sale for the benefit of and payment of Arrington's creditors.

The trustee was given authority to hold the property if in his discretion a better price could be obtained by holding it, but in no event for a period longer than twelve months from the date of the deed of assignment. It is then provided: "This deed is upon the further trust that after the payment of all the debts properly chargeable against the said J. Howard Arrington, all of the surplus remaining in the hands of said trustee shall be by him turned over to the said J. Howard Arrington, his administrators or assigns."

Shortly after the execution of the last mentioned deed of trust S. S. Lambeth, Jr., the trustee, and an attorney practicing in Bedford, became ill, and left the State for the purpose of rest and of regaining his health, leaving his business affairs in the hands of John L. Abbot, another attorney, also practicing in Bedford, who undertook to administer the Arrington trust.

The total indebtedness of Arrington was between $20,000 and $30,000. The 120.84 acre farm was sold

for $10,000, and on July 17, 1921, Arrington, acting for himself, and John L. Abbot, assuming to act as agent for S. S. Lambeth, Jr., trustee, sold the 7,500 cases of tomatoes to C. W. Gills, and others. The contract of sale was in writing and was as follows:

Bedford 7–17–21.

J. Howard Arrington's tomatoes
to C. W. Gills—

Goods sold—all merchantable goods in Arrington's cannery.

Price on No. 2's 69 cents net.

Price on No. 3's 105 cents net.

Goods to be labeled and delivered to Bedford Can Company Factory in Bedford in good merchantable condition.

J. H. Arrington.

To be inspected on delivery and accepted according to condition—unmerchantable goods to be refused.

Payment on delivery of each thousand cases.

Rejected goods to be stored in factory of C. W. Gills for a period of six months.

Title to pass on delivery and acceptance.

Full delivery in sixty days.

C. W. Gills,
John L. Abbot, agent for
S. S. Lambeth, Jr., trustee,
J. H. Arrington.

Under this contract the purchase price of the tomatoes amounted to $9,970.02. Arrington refused to deliver the tomatoes, and Gills and those associated with him, after Landon Lowry had been substituted trustee in place of S. S. Lambeth, Jr., instituted an

action in detinue against the substituted trustee to recover the tomatoes.

Upon the trial of this action the court held that there could be no recovery by the plaintiffs until it was ascertained whether the creditors could be paid in full out of proceeds arising from the sale of property assigned to the trustee for their benefit, without selling the tomatoes, and that proceedings should be instituted on the chancery side of the court, in which execution of the trust could be enforced, the trustee's account settled, and it could be ascertained whether, Arrington, had any interest in the trust subject which he had a right to dispose of.

Thereupon Gills and those associated with him filed their bill setting out the facts substantially as narrated above, alleging that the grantor, Arrington, was solvent and that there was more than enough of trust assets to satisfy his debts and leave untouched the tomatoes; filing the deed of trust, the deed of assignment and the contract, as exhibits, and praying that the trust be executed and an accounting had, the creditors paid, and that the contract for the sale of the tomatoes be enforced.

Considerably more than a year had elapsed between the execution of the deed of assignment and the filing of the bill, and the trust had not been fully executed.

Pending the final decision by the circuit court the tomatoes were sold and the difference between the sale price to Gills and the actual sale price ($4,363.10) was deposited in the bank, subject to the adjudication of the questions involved in the suit.

The substituted trustee, Lowry, and Arrington, the grantor, filed demurrers and answers. It was conceded that Arrington, after the payment of all of his debts, would have a considerable estate left.

There were a number of grounds of demurrer, all of which the learned chancellor overruled, and held that under the circumstances the contract was binding upon Arrington; that the plaintiffs in the bill were entitled to the difference between the contract price of the tomatoes and the price at which they were sold by the substituted trustee, and so decreed. After the entry of this decree S. S. Lambeth, Jr., returned home and filed a petition to rehear it, which, after consideration, the court denied.

From the final decree an appeal and supersedeas were allowed to this court.

There were a great number of legal questions discussed in the petition for an appeal and in the briefs, but the material questions involved in the demurrer may be disposed of under two heads.

(1). As to whether the contract for the sale of the tomatoes was valid and binding; and,

(2). Whether a court of equity had jurisdiction of the controversy.

(1). As to the first proposition let it be conceded for the purpose of the consideration of this question that John L. Abbot, who signed the contract as agent for S. S. Lambeth, Jr., trustee, had no authority to act for the trustee in the execution of such a contract. The question then involved is, did Arrington, the grantor in the deed of assignment, make a contract binding upon him with reference to any of the property assigned, whereby he undertook to sell a portion thereof, which was not necessary for the payment of his debts?

It is not contended that Arrington had any right to make any contract with reference to any of the assigned property which would jeopardize in the slightest degree the interest of his creditors. But

Arrington had a beneficial interest in the property he assigned, not only because, as a matter of law, after the payments of his creditors in full, and the costs of executing the trust, he was entitled to the entire balance, but under the express provision of the deed of assignment quoted above, he is entitled to have all of the surplus in the hands of the said trustee turned over to him, or his assigns.

[1] So that the situation here is, as disclosed by the record, that there is a surplus, after the payment of all debts and the cost of executing the trust, to which Arrington is entitled. Arrington entered into the contract in good faith, no taint of fraud or undue advantage is even attempted to be shown. Under these circumstances did not Gills and his associates, in good conscience and equity, take the place of Arrington as to the ownership of the tomatoes? We think they did.

[2] We are not unmindful that there is a distinction as to the right of a grantor with reference to the subject matter of the trust in the ordinary deed of trust to secure a debt, and the trust subject in a general deed of assignment to pay creditors.

Thus in *Hale* v. *Horne*, 21 Gratt. (62 Va.) 121, it was held that a mortgage is regarded as security for debt, and until a decree for foreclosure, the mortgagor continues the real owner and may sell and deal with the mortgaged premises as owner. The equity of redemption is descendible by inheritance, devisable by will, and alienable by deed.

While in *Sandusky* v. *Faris*, 49 W. Va. 151, 38 S. E. at page 363, the court held (quoting from the syllabus): "When the grantor in a deed of trust conveys all his property to a trustee for the benefit of his creditors, with power to sell the same immediately, and authorizes the trustee, after paying the expenses of the trust and

·discharging the liens on the property, to make a pro rata distribution of the proceeds of the trust property among the grantor's creditors, and reconvey to him whatever may remain unsold in case the property shall be more than sufficient to pay all the debts, such deed is absolute, and the conveyance is to a trustee for the purpose of raising a fund with which to pay debts, as distinguished from a deed of trust in the nature of a mortgage to secure the payment of debts, and amounts to an appropriation of the property, as far as may be necessary to the accomplishment of that purpose.

"The grantor in such deed thereby consents to an immediate sale of such property, and, such consent being analogous to that given by a debtor in a decree directing a sale of his property made and entered with his consent, he will not be permitted to enjoin such sale merely because the amount of his debts, their priorities, and the persons to whom they are due and owing having not been ascertained, the amount to be raised by such sale is uncertain, and the legal title is outstanding in trustees in prior deeds of trust."

It is upon this distinction that plaintiffs in error here rest their contention that Arrington was without power to make any contract as to the property conveyed at all.

[3] We are in full accord with the views expressed in both cases, but as we view it, there is no distinction which is applicable to the facts of the case under review, where the creditors are paid or can be paid, in full, out of the proceeds of the property conveyed, without the necessity of resorting to the sale of the property which the grantor contracted to sell a third party. The inhibitions imposed upon the grantor in such a deed of trust are for the protection of his creditors, and not for his protection. After his creditors

are paid in full he is estopped, in equity and good con-
science, in the face of his contract to sell part of such
property, to claim he had no authority to sell, to the
injury of a third party who contracted with him in
good faith.   If such a purchaser's rights conflict with
the rights of the grantor's creditors, they fall, but
after the payments of the debts, the trustee holds for
the benefit of the grantor and those holding under him.
The gist of the holding in *Sandusky* v. *Faris, supra,*
is that the appropriation of the property by the deed
of assignment is only *as far as is necessary* to pay the
grantor's creditors.   The contract, therefore, in the
instant case, was binding upon Arrington.

[4] (2).  The whole superstructure of the plaintiff in
error's case rests upon the foundation of some supposed
distinction in the two kinds of trust deeds, above men-
tioned.   If we are warranted in holding that there is
no distinction applicable to the facts here which would
render the contract invalid, and so far as Arrington is
concerned, and we cannot doubt that we are, then it
would seem that there can be no question as to the
jurisdiction in equity to afford relief.

It is contended that Gills' remedy was by action for
damages for a breach of contract.   The obvious an-
swer to this contention is that Arrington had no legal
title to dispose of, and the presumption would be
that he had no beneficial interest to dispose of.   Every-
thing he possessed had been assigned to a trustee for
the satisfaction of his debts.

His rights were equitable, and having knowledge
and notice of the deed of assignment, Gills and his
associates knew, as a matter of law, that the sale to
them was not made by the trustee, and hence, that
unless the creditors could be fully satisfied out of the
proceeds of sale of other property, Arrington could

make no binding contract as to the tomatoes. They would not therefore have been entitled to damages for a failure on the part of Arrington to deliver the tomatoes unless there were sufficient assets to settle with the creditors without selling the tomatoes.

In order to ascertain this, it was necessary to have the trustee execute the trust and have a settlement of his accounts. After the contract was entered into between Arrington and Gills, Gills stood in Arrington's shoes as to the tomatoes. He was entitled to them if they were not needed to pay Arrington's debts.

Arrington would certainly have had the right to come into a court of equity and have his trust executed and his equity of redemption protected. 1 Pomeroy Equity Jurisp. section 164. And if he had this right his assignee Gills had the right also. The tomatoes were covered by a deed of trust and Gills had the right to implead the trustee and the creditors as well as the grantor in the deed of trust, for the administration of the trust; he had a right to have an accounting of the assets and the liens, in order to ascertain whether he had any rights under his contract.

[5] As pointed out, until this was done, the defendants in error could not know whether they had made a valid contract for the purchase of the tomatoes, and an action at law for damages for the breach of it would have been premature. Having properly invoked the aid of a court of equity, therefore, and the chancery court having once properly acquired jurisdiction of all the parties and control of the assets, under well established principles, it had jurisdiction to settle all questions in controversy among them.

The trial court found that, under the peculiar facts of this case, Arrington had made a contract for the sale of the tomatoes to Gills and his associates binding

upon both parties, and that Arrington had breached it, and that Gills had been damaged to the extent of the difference between the contract price and the sale price, and as the tomatoes had been sold under order of the court pending the final disposition of this suit, that Gills was entitled to the difference between the purchase price and the sale price. We see no error in this conclusion, and the decree will be affirmed.

*Affirmed.*