## 𝔖taunton

LARCHMONT HOMES, INC. v. ANNANDALE WATER CO., INC.

·September 3, 1959.

Record No. 4973.

Present, All the Justices.

The opinion states the case.

*Nathan L. Silberberg,* for the plaintiff in error.

*John A. K. Donovan (William C. Bauknight; Haynie S. Trotter; Donovan, Turnbull & Brophy,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On December 2, 1947 Larchmont Homes, Inc., appellant, filed an action against Annandale Water Co., Inc., appellee, in which it was alleged that $30,300 was due it under a written contract, dated November 15, 1947, between "Columbia Pines, Inc., and/or Sidney Wineberg [Weinberg] and his associates" and James A. McWhorter.

It was further alleged that after several successive assignments, the rights of Columbia Pines, Inc. and Weinberg under the agreement had been assigned to appellant and that McWorter had assigned all his rights, privileges and conditions in it to Annandale Water Co., Inc. of which he was president. At the conclusion of all the evidence the court sustained defendant's motion to strike plaintiff's evidence. The jury returned a verdict for defendant and judgment was rendered thereon.

Columbia Pines, Inc. was the owner of a tract of land near Annandale in Fairfax County which it was developing. McWhorter was the owner and operator of certain facilities for the supply of public water in that vicinity. Columbia Pines, Inc. desired to avail itself of a water supply in connection with the housing project and it, along with Weinberg, entered into the above-mentioned contract with McWhorter. In it Columbia Pines, Inc. and Weinberg agreed, among other things, to install in the subdivision known as "Columbia Pines" at their own expense cast iron water mains with valves, fittings, fire hydrants and taps. McWhorter agreed to connect his water mains to those to be constructed in the subdivision by Columbia Pines, Inc. or to drill wells and erect pumping stations therein and make available a supply of water to "Columbia Pines" at the same rates and according to the same regulations prescribed by the State Corporation Commission for the operation of the water system conducted by Annandale Water Co., Inc. The contract also provided:

"(5) * * * As soon, however, as a minimum of 200 individual subscribers within the boundaries of the Columbia Pines Subdivision now or as hereafter established, * * * have been connected to the system by the Party of the First Part [Columbia] and are using the water supply pursuant to the rates and regulations of the Annandale Water Company, then the Party of the Second Part [McWhorter] or his assigns will forthwith deliver to the Party of the First Part its promissory note in a sum equal to $100.00 per subscriber, such note to bear interest at the rate of 4 per centum per annum and to be payable at the rate of $200.00 per month, * * * The Party of the Second Part will pay the Party of the First Part the sum of $100.00, in cash, for every connection in excess of 200 connections installed within the boundaries of the Columbia Pines Subdivision as aforesaid and connected to the system by the Party of the First Part. * * * *The provisions of this paragraph shall not apply to any lot or parcel of land in said Subdivision which is conveyed to others by the Party*

*of the First Part without being connected to the water mains before such conveyance.* The provisions of this paragraph shall also be null and void in the event of the bankruptcy of the said Party of the First Part. In the event that the provisions of this paragraph become null and void on account of either contingency previously mentioned then the Party of the Second Part or his assigns shall be free to deal with any Owner of any lot or lots in the Subdivision in the same manner that he would deal with any ordinary subscriber." (Italics supplied)

On March 11, 1949 Columbia Pines, Inc. conveyed the remainder of the tract in which lots had not been sold to James H. Simmonds and John L. Culler, trustees, to secure the payment of a debt of $50,-000 owed by the corporation. At that time 70 water connections had been made to houses in the subdivision. There was default in the payment of the note secured by the deed of trust and by deed dated August 8, 1950 the trustees conveyed the land to A & B Land Corporation, the successful bidder at the foreclosure sale. The property was later conveyed to other parties.

Columbia Pines, Inc. was granted a certificate of dissolution by the State Corporation Commission on July 25, 1951. Subsequently appellee contracted with several corporations who were building in the area for water supply. The 200th water connection was made in September 1954 and thereafter the number had increased to approximately 300. The record, which is not clear, does not show that appellant, incorporated in 1957, has ever acquired title to any real property within the subdivision, made any water connections or installed any lines. Its claim is under an assignment of the rights of Columbia Pines, Inc. from Timber Lane, Inc., a successor assignee of those rights, dated November 9, 1957. It argues that it is due $100 for each connection made since the contract in question was entered into.

In granting defendant's motion to strike plaintiff's evidence, the trial judge stated:

"It seems to me that as a matter of law there has been a conveyance to others here of lots and parcels without their first being connected to the water mains before such conveyance; that at that time there were not, and there did not thereafter, so far as the remaining land was concerned, come into existence 200 connections as contemplated by this contract so as to trigger the liability of the defendant for the payment of this money."

Appellant contends that the deed of trust Columbia Pines, Inc. executed on March 11, 1949 for $50,000 was not a "conveyance" within the meaning of the contract, and that if it did constitute such a conveyance appellant was still entitled to recover since the property had been connected to the water mains before the conveyance was made. On the other hand appellee maintains that the execution and delivery of the deed of trust and foreclosure thereunder was a "conveyance" of the property within the meaning of the contract and that inasmuch as the property had not been connected to the water mains before such conveyance it was relieved of any obligation to pay.

In 16 Am. Jur., Deeds, § 3, p. 438, it is stated:

"Subject to a more particular statutory definition, the term 'conveyance' connotes a deed whereby the title to land is transferred from one person to another, both the term 'deed' in the restricted sense and the term 'conveyance' being an abbreviated form of the expression 'deed of conveyance.' * * *"

Black's Law Dictionary (4th ed.) p. 402 defines the term "conveyance" as follows:

"In real property law. In the strict legal sense, a transfer of legal title to land. In the popular sense, and as generally used by lawyers, it denotes any transfer of title, legal or equitable. * * * An instrument in writing under seal * * * by which some estate or interests in lands is transferred from one person to another; such as a deed, mortgage, etc."

Black defines a deed of trust at page 503 as "an instrument in use in many states, taking the place and serving the uses of a common-law mortgage, by which the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions."

In *Ransome* v. *Watson's Admr.*, 145 Va. 669, 677, 134 S. E. 707, we quoted from Lile's Notes on Equity Jurisprudence, p. 61 wherein it is said:

"In other words, a creditor who puts out his money *specifically on a particular piece of property,* and secures from the borrower a conveyance of the legal title to the property, by way of pledge, mortgage or deed of trust as security for the loan, is, in equity, regarded as a *purchaser for value to the extent of his debt.* And rightly so, since to the extent of his debt he is the *owner,* and has legal title. * * *"

Thus we find that a deed of trust is a conveyance and that legal title to the property conveyed is vested in the trustee or trustees named therein. Unless that be true a trustee could not pass legal title to a purchaser at the foreclosure sale.

The record reveals that Columbia Pines, Inc. conveyed the unimproved land to the trustees before 200 water connections had been made and that the trustees foreclosed and conveyed the tract to A & B Land Corporation prior to the 200th connection. It cannot be successfully argued that such transfers did not constitute a "conveyance" of the property as the term is used in the contract.

Appellant maintains that a water main was installed through a portion of the undeveloped property before the deed of trust was placed upon it and therefore the escape or exclusion clause is not applicable. Appellee argues that it (Annandale) laid the water main in 1951, which was after the execution and delivery of the deed of trust and the sale by the trustees. The evidence is not clear on this point. However, the evidence does show that no connections or taps were made to a water main or meter boxes installed in the affected area prior to the foreclosure under the trust deed. Therefore, by the terms of the contract the property had not been "connected to the water mains" prior to its conveyance.

Since Columbia Pines, Inc. did not cause 200 connections to be made prior to the conveyance in question and since the property conveyed was not connected to the water mains at the time of conveyance, the trial court properly struck appellant's evidence.

The judgment appealed from is

*Affirmed.*