# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Home Building Association, Et Al. v. Henry C. Mackall, Trustee, Et Al.

March 9, 1964.

Record No. 5699.

Present, All the Justices.

*Lytton H. Gibson (Barry D. Murphy; Lawrence W. Douglas; Gibson, Hix, Millsap & Hansbarger,* on brief), for the appellants.

*Henry C. Mackall (Donald L. Holford; Pickett, Keith & Mackall; Holford & Sullivan,* on brief), for the appellees.

WHITTLE, J., delivered the opinion of the court.

This chancery suit was instituted in the circuit court on September 12, 1961. The bill of complaint prayed inter alia for a judicial determination of the validity of the lien of a certain instrument entitled "Deed of Assignment and Conveyance" hereafter referred to as Exhibit A. This instrument was executed and recorded in February 1957 conveying the land here involved.

Complainants in the bill were Henry C. Mackall, one of two trustees named in Exhibit A, and Harry Otis Wright, Jr., a beneficiary under Exhibit A. Six defendants were named in the bill. Two of the defendants were Home Building Association and Arlington Trust Company, beneficiary and trustee, respectively, under a deed of trust also conveying the land in question which was executed and recorded in March 1961.

Only these two defendants sought and obtained an appeal from the decision of the trial court which decreed the lien of Exhibit A to be valid and prior to the lien, if any, of these two defendants who are now appellants. The two complainants are actively defending this appeal as appellees.

The sole question, insofar as the parties to this appeal are concerned, relates to the priority and validity of other respective claims and liens.

On May 22, 1962, a number of facts were stipulated by the parties to this appeal as a result of which stipulations Mr. Gibson, attorney for appellants, petitioned for leave to file a supplemental answer. An order permitting the filing of this answer was entered on May 28, 1962. The contention raised by the answer was that the appellants were entitled to priority over the appellees to the extent of $40,000.00.

On the argument of a motion to strike the supplemental answer appellants also alleged as a defense that they were entitled to an equitable subrogation. By decree entered in January 1963, the chancellor overruled the defenses and struck the supplemental answer. In this decree the chancellor held that, as a matter of law based upon the stipulated facts and the exhibits which had been agreed to by counsel for appellants, appellants were not entitled to priority over the appellees in any amount. This ruling was assigned as error.

On December 3, 1962 appellants, now represented by Lawrence W. Douglas, attorney, filed a motion for a decree of reference. This motion was based upon the ground that the court was without jurisdiction to determine the issue of priority as between the appellants and the appellees without convening other parties. The motion for a decree of reference was denied and this ruling has also been assigned as error.

The issues presented on this appeal as stated by appellants are:

"I.   Are the appellants entitled to priority over Exhibit A to the extent of $40,000.00 by reason of the doctrine of equitable estoppel?

"II.  Are the appellants entitled to priority over Exhibit A in some unspecified amount by reason of the doctrine of subrogation?

"III. Should the court have referred this matter to a Master Commissioner to determine:

(A) How much and to whom the proceeds from the appellants' $50,000.00 loan were disbursed.

(B) The amount and priority of the liens on the property involved.

(C) The amount and number of creditors of Ronald E. Adkins and Carolyn D. Adkins as of February 1, 1957, and thereby the validity of Exhibit A."

Assignment of error No. III(C) has evidently been abandoned as it is not referred to in appellants' brief nor in argument before us.

It appears that in 1956 Ronald E. Adkins and Carolyn D. Adkins

were indebted to fifteen creditors in varying stated amounts totaling $43,563.00. It has been stipulated that no payments have been made on these debts. To forestall litigation and to assure these particular creditors of the payment of their specified claims the Adkins executed under seal Exhibit A entitled "Deed of Assignment and Conveyance". This document was dated February 1, 1957, was duly acknowledged and recorded on February 28, 1957. In Item 2 of this document the Adkins conveyed to the trustees a tract of valuable land containing 28.838 acres. It is this conveyance which is the subject of this proceeding. This property was the home of Ronald and Carolyn Adkins and was owned by them as tenants by the entirety with the common law right of survivorship. *Vasilion* v. *Vasilion* (1951), 192 Va. 735, 66 S.E. 2d 599.

The document Exhibit A contains a number of provisions respecting the payment of the debts secured therein. The most important of these provisions are the following:

1. It recites that the parties of the first part, the Adkins, are indebted to the creditors named therein.

2. It contains the statement that the Adkins acknowledge the indebtednesses set forth.

3. It contains a provision whereby the Adkins, and each of them, agree to pay the creditors in full, with interest thereon from the date of the document.

4. It contains a statement that the Adkins desire to secure the creditors' claims, and the *in trust* provision states that it is "to secure the following creditors".

5. It contains a copy of an agreement made by each of the fifteen creditors whereby they (a) agree to accept its provisions as security for their debts; (b) agree to a two year moratorium on efforts to collect; (c) waive interest accrued on the debts; (d) agree to release Carolyn D. Adkins in the event of the death of Ronald E. Adkins within two years; and (e) agree to further extensions in the event of partial payments as contemplated therein.

6. It contains a reservation by the Adkins of the right to use and occupy the property for a minimum period of two years with further extensions possible.

7. It contains agreements on the part of the Adkins to keep the property in good repair, to pay taxes, insurance and all payments coming due on three existing trusts which were recognized to be prior liens.

8. It contains a defeasance clause providing that upon payment by the Adkins of the debts secured the Trustees are required to release the property to Ronald E. and Carolyn D. Adkins.

9. It contains provisions that upon default by the Adkins the Trustees are authorized to sell the property and pay off the debts on a pro rata basis, with any surplus to be returned to the Adkins.

At the time of the conveyance in February of 1957, the property was subject to three prior recorded deeds of trust, as follows:

1. A deed of trust securing a note in the original sum of $25,000.00. This note was held by the George H. Rucker Company, which was represented by S. Gail Landon, Jr., a Fairfax attorney. This trust will hereafter be called the Landon trust.

2. A deed of trust securing two notes totaling $16,500.00, the holders of which were represented by William C. Bauknight, Jr., a Fairfax attorney. This trust will hereafter be referred to as the Bauknight trust.

3. A deed of trust securing the sum of $50,000.00 held by the Mt. Vernon Bank & Trust Company. This will hereinafter be called the Mt. Vernon trust. This indebtedness was also secured by a chattel on certain personal property not here involved.

Subsequent to the recordation of Exhibit A and prior to the occurrence of any other material facts, the Adkins paid in full the Bauknight trust in the sum of $16,500.00. After this indebtedness was paid the property was subject to only three liens, the Landon trust, the Mt. Vernon trust and the debts secured in Exhibit A.

In July of 1958, the Landon trust was about to be foreclosed and Ronald E. Adkins attempted to negotiate with the creditors secured by Exhibit A to reach an agreement whereby the debts could be refinanced.

Such an agreement was made by the creditors, who agreed that the property would be released from their liens and conveyed to Rufus Waple, who would execute a $35,000.00 first trust and a $5,000.00 second trust. The property would then be reconveyed to the trustees to secure the creditors named in Exhibit A. The terms of this agreement were contained in a letter written by the Adkins' attorney, James M. Thomson, to the secured creditors.

Relying upon the letter of James M. Thomson, all but one of the creditors executed a deed of release. Mr. Thomson, one of the trustees, also executed the release but the other trustee, Henry C. Mackall, did not.

The property was conveyed to Waple who executed a deed of trust to secure a $35,000.00 loan made by Perpetual Building Association. Some of the proceeds of this loan were used to pay off the Landon trust and to obtain a release of the Mt. Vernon trust, and $7,495.70 of the $35,000.00 was paid to the Adkins and their wholly owned company, Bayview Excavating Corporation.

Thereafter, the final terms of the agreement were never carried out, the property was not reconveyed to the trustees under Exhibit A according to the terms of the agreement, and for this reason the deed of release was not signed by the co-trustee, Henry C. Mackall, or by one of the creditor beneficiaries. The deed of release was recorded in spite of the promise in Thomson's letter to the creditors that no papers would be recorded unless all creditors and both trustees signed same and the creditors were otherwise fully protected.

The appellants herein had actual and constructive knowledge of the fact that the release was not completely and properly executed and admit by their stipulation that they should have made inquiries to ascertain the reason therefor. They further stipulated and agreed that had they made such inquiries they would have discovered the terms of the agreement and that it had not been complied with.

On June 2, 1959 Rufus Waple conveyed the property to Bayview Excavating Corporation, which was wholly owned by the Adkins. This corporation was organized in 1956 and was dissolved by operation of law in June of 1958. Thus the corporation was not in existence at the time of the aforesaid conveyance to it.

On March 29, 1961 the appellant, Home Building Association, made a $50,000.00 loan to be secured by a deed of trust on the 28.838 acre tract. This loan was made to Bayview Excavating Corporation. Home Building Association was represented in the closing of the loan by Joseph W. Creagh, attorney, who discovered that Bayview Excavating Corporation had been dissolved. Rather than reinstate the corporation, he organized a new corporation by the same name. It was the new Bayview Excavating Corporation which executed the $50,000.00 note held by Home Building Association and the deed of trust securing it on March 29, 1961. The deed of trust was recorded on the same day. No new conveyance was obtained from Waple or from the old Bayview Excavating Corporation.

It is asserted in appellants' petition for appeal that some of the proceeds of their $50,000.00 loan were used to pay liens which were prior in time to the lien established by Exhibit A. The record contains no

evidence of this fact. On the contrary, it affirmatively appears that all liens of record ahead of Exhibit A were paid and released when the loan of $35,000.00 made by Perpetual Building Association was negotiated. Furthermore, appellants never asserted in the lower court either in their pleadings or otherwise that any part of the proceeds of their $50,000.00 loan were used to pay liens prior in time to liens created by Exhibit A.

The decree of the chancellor deciding the issue involved, after embodying a preliminary statement, was as follows:

"And it appearing to the court that said defendants [Arlington Trust Company, Inc. and Home Building Association] raised the defenses in their pleadings and at the several hearings that they were entitled to a credit of $40,000.00 on the basis that the creditors under the Deed of Assignment and Conveyance, dated February 1, 1957, were at one time willing to subordinate the said Deed to later liens in this amount, and the further defense that the $50,000.00 loan made by the Home Building Association could be traced back through the aforesaid later liens to the payment of liens prior to the said Deed of Assignment and Conveyance [Exhibit A]; and that the said defendants were entitled to the right of subrogation in the amount of $50,000.00; and it further appearing to the court that the foregoing are the sole remaining grounds of defense made by the said defendants to the relief requested by the complainants, other than a plea to the jurisdiction which has been ruled on in another decree.

"And the Court being of the opinion that the instrument designated as a Deed of Assignment and Conveyance * * * filed with the Bill of Complaint as Exhibit "A", was a valid and effective transfer of legal title to the property therein described to Henry C. Mackall and James M. Thomson, Trustees; that the instrument designated as a Deed of Release, dated July 10, 1958, recorded on July 31, 1958 * * * a copy of which is filed with the Bill of Complaint * * * was not completely executed and did not operate as a transfer or conveyance of legal title from the said trustees, and did not operate in any way to alter the rights of the trustees or beneficiaries named in said Deed of Assignment and Conveyance.

"And it appearing to the Court from the evidence before it that the said defendants [Arlington Trust Company, Inc. and Home Building Association] had actual and constructive knowledge both of the said Deed of Assignment and Conveyance, and that the purported Deed of Release was not completely executed, and that their subsequent

actions, including the loan of $50,000.00, were made with knowledge of these facts.

"And the Court further being of the opinion that the said defendants are not entitled to a lien on the property described in the said Deed of Assignment and Conveyance with credit against or priority in any amount over the rights of the trustees and beneficiaries under the said Deed of Assignment and Conveyance * * * it is ADJUDGED, ORDERED and DECREED that the answer and supplemental answer of Arlington Trust Company, Incorporated, and Home Building Association, defendants, and the foregoing defenses, be and they hereby are stricken. * * * ".

The first question posed by appellants is:

"I.   Are the appellants entitled to priority over Exhibit A to the extent of $40,000.00 by reason of the doctrine of equitable estoppel?"

Here appellants contend first that they should have priority to the extent of $40,000.00 by the application of the doctrine of equitable estoppel. They say that they "were induced by the purported release signed by the beneficiaries to make the loan". This contention is made in the face of the fact that appellants solemnly stipulated that they had both actual and constructive knowledge of the fact that the release was not signed by one of the trustees and by one of the beneficiaries and in the face of an agreement and understanding that the failure of any one of the beneficiaries or either of the trustees to sign the waiver of the lien created by Exhibit A would void the release. It was further stipulated that the failure of the trustee and creditor to sign the release would prompt a reasonable and prudent man to make inquiry as to the reason for the failure. They further stipulated that no such inquiry was made and that had such inquiry been made they would have discovered the conditions and representations under which the other creditors secured in Exhibit A had executed the release. Further appellants admit in their argument that the conditions under which a majority of the creditors signed the release were not complied with. Clearly they can not in the face of these stipulated facts rely upon the incomplete release and the chancellor properly so held.

As said in *Lindsey* v. *Clark* (1952), 193 Va. 522, 526, 69 S.E. 2d 342, 345, "It is essential to the application of the principles of equitable estoppel, or estoppel *in pais*, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are

known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel."

The next question raised by appellants is:

"II. Are the appellants entitled to priority over Exhibit A in some unspecified amount by reason of the doctrine of subrogation?"

Here appellants contend that they are entitled to subrogation to the extent that proceeds from their $50,000.00 loan paid liens which were prior in time to that created by Exhibit A. It is hardly necessary to consider this assignment since there are no facts stipulated, alleged, pleaded or proven which would support the theory of equitable subrogation. The record discloses that the liens to which appellants seek subrogation were paid off at the time of the loan of $35,000.00 made by Perpetual Building Association. Evidently appellants have confused the loan of $50,000.00 made by them in March, 1961 with the loan made by Perpetual in July 1958 after which there were no remaining liens. Thus the doctrine of subrogation is not here involved.

The third question posed by appellants is:

"III. Should the Court have referred this matter to a Master Commissioner to determine: (A) How much and to whom the proceeds from the appellants' $50,000.00 loan were disbursed, (B) The amount and priority of the liens on the property involved, and (C) The amount and number of creditors of Ronald E. Adkins and Carolyn D. Adkins as of February 1, 1957, and thereby the validity of Exhibit A."

The motion made by appellants to have this matter referred to a master commissioner was filed by the then third counsel of record for appellants three days before the *ore tenus* hearing before the chancellor. The case had been pending for over a year when the motion for a reference was made. In the motion appellants contended that the claims of the beneficiaries under Exhibit A were not binding upon them. This contention was made in spite of the fact that they had stipulated that the promise to pay contained in Exhibit A was executed by the Adkins and that no payments had been made thereon. No better proof could be produced to show the amount and validity of the claims thus secured. The stipulation concedes the accuracy of the claims.

In appellants' motion for a reference they nowhere alleged they did not know how much or to whom the proceeds of the $50,000.00 loan were disbursed. They did not allege that there were other liens on the property involved. They did not allege that the Adkins had

other creditors in February 1957. And, in short, they made no factual allegations of any kind other than to controvert matters to which they had already fully stipulated to their detriment.

Much of the evidence in this case was heard *ore tenus* by the chancellor and the record is replete with depositions, requests for admission of fact and other discovery proceedings instituted by appellees. Nowhere is it shown that at any time did the appellants use such procedure. The facts which they desired to gain by a reference to a special master could easily have been produced in the hearing before the court. The requests for the use of a commissioner were superfluous inasmuch as the court had elected to hear orally testimony as to any disputed fact.

In their argument on subrogation the appellants contended that by the denial of a reference they were precluded from determining how much and to whom the proceeds from the $50,000.00 loan were made. Their motion did not suggest that this was the purpose of the motion. The record affirmatively shows that this information was always available to them. Appellants were represented at the closing of this $50,000.00 loan by their then attorney, Joseph W. Creagh. Mr. Creagh's deposition was taken on January 30, 1962. At that time Mr. Gibson, the second attorney of record for appellants, was present and at this time they could have obtained from Mr. Creagh any information desired about the disbursement of the proceeds of the $50,000.00 loan.

As has been pointed out, the single issue between the parties to this litigation concerned the validity and priority of the two asserted liens. This was all the court below determined by its decrees. It decided that as between these parties the appellees are prior in time and right to the appellants. Thus we have a simple situation where there are two trusts on the property. The value of the property is not shown and there was no factual showing and no allegation of any other liens possibly existing. In fact, there was nothing to justify the court in referring the matter to a commissioner.

■ The last contention made by appellants is that Exhibit A *appears* to be an assignment for the benefit of creditors and that it *probably* created a preference in violation of § 55-156 of the 1950 Code of Virginia as amended. This issue now raised for the first time in appellants' brief was never raised by them in their pleadings or in their argument in the trial court. Therefore, we need not consider it here. We might say in passing however that the assignment in

Exhibit A is not the kind of assignment contemplated by § 55-156 of the 1950 Code of Virginia as amended. While an assignment may be general in nature it is not necessarily a general assignment as we know the meaning of that term. The general assignment consists of a transfer of all the debtor's assets upon a trust for immediate liquidation and the payment of all his debts so far as the proceeds may go. Neither were all of the Adkins' debts here involved nor was all their property pledged as security. Thus Exhibit A was not a general deed of assignment executed for the benefit of creditors. See Glenn on Liquidation, page 172. Also see 35 Va. Law Rev., page 539. See also *Lowry* v. *Gills*, 143 Va. 79, 129 S. E. 269.

We find no error in the decrees appealed from and they are affirmed.

*Affirmed.*