## CIRCUIT COURT OF FAIRFAX COUNTY

Virgil L. Harris et al.

v.

Crows Nest Harbour
Limited Partnership et al.

April 12, 1991

Case No. (Chancery) 058501

By JUDGE RICHARD J. JAMBORSKY

The matter is before the Court on the Joint Petition of Virgil L. Harris and others (plaintiff) and Woodrow D. Marriott and others (Marriott-defendants) for entry of a decree confirming the Stipulation of Settlement between the parties. Diversified Mortgage Investors (DMI) and Warren K. Montouri, Trustee, entered an appearance and objected to the entry of the decree.

On April 12, 1990, the Court heard oral argument and took the matter under advisement. The Court received additional argument in August and September of 1990 when counsel filed additional memoranda. The Court has resisted the urge to decide the case from the bench because of the complexity and importance of the issues and of the necessity for a clear statement of the Court's reasons for its decision. The Court apologizes to the parties for its role in the delay, but frankly, it is a very difficult case, as any review of the file will confirm. After extensive deliberation of the arguments and the briefs submitted by the parties, the Court now grants the Petition of the plaintiff and the Marriott-defendants.

The Court's confirmation of the Stipulation of Settlement will have a two-fold effect in this case. First, the plaintiff's nominee, Woodrow D. Marriott, will be

vested with title to the lots in question. Second, Woodrow D. Marriott will offer the lots in question for sale, public or private, within sixty days of the entry of the Decree. The proceeds from the sale of the lots will be used to pay (1) the costs of the sale; (2) the expenses of Woodrow D. Marriott for sums expended as part of the settlement; and (3) the fees and costs of the attorneys for Woodrow D. Marriott. The remainder of the proceeds are to be deposited with the Court. Those individuals having a valid claim may apply to the Court for a portion of the proceeds.

## I. *The Facts of the Case*

Coke Gage and FVM Corporation, as general partners, and Research Homes, Inc., Woodrow D. Marriott, Frank J. Johnson, Bicknell A. Robbins, and William J. Durkin, as limited partners, formed the Crows Nest Harbour Limited Partnership (CNHLP). The parties formed CNHLP for the purpose of developing an estimated 4,800 acre tract of land in Stafford County, Virginia. The development was to be known as Crow's Nest Harbour.

In 1971, a number of individuals entered into contracts with CNHLP for the purchase of lots in the development. A purchaser of a lot was required to execute a promissory note for the unpaid balance of the purchase price to CNHLP. A purchaser was also required to execute a deed of trust on the property to secure the indebtedness.

In 1973, CNHLP obtained a two-phase construction/development loan in the amount of $14,600,000 from DMI. Phase 1 provided for $11,900,000 in acquisition and development financing. Phase 2 provided for $2,700,000 in consumer obligation financing. DMI took a mortgage on most of the realty in the development as security for the loan. However, the mortgage did not refer to the lots in question.

CNHLP also granted DMI a security interest in all contracts and notes on lots sold in the project. The security interest represented additional security for the repayment of the loan. When a lot was sold. CNHLP would pledge and transfer the promissory note and the accompanying deed of trust to DMI. In April of 1973, CNHLP pledged and transferred the plaintiff's sales contract, promissory note, and deed of trust to DMI.

In April and May of 1973, DMI made disbursements totaling $5,210,000 to CNHLP; these disbursements represented $2,745,000 in Phase 1 funds and $2,465,000 in Phase 2 funds. In November of 1974, DMI discontinued funding CNHLP. CNHLP abandoned the development project by December 31, 1974, and subsequently filed for bankruptcy. Thereafter, the plaintiff ceased making payments on his promissory note.

In late 1975, CNHLP stopped making payments on its promissory note to St. Charles City, Inc. St. Charles City was the holder of a first deed of trust on 3,795 acres in Crows Nest Harbour. As a result, St. Charles City attempted to foreclose on the property which was secured by their first deed of trust. DMI subsequently paid St. Charles City approximately $900,000 for an assignment of the first deed of trust.

In 1976, CNHLP filed suit against DMI in the District Court for the Eastern District of Virginia. CNHLP alleged the following causes of action against DMI: breach of fiduciary duty, common law fraud, and a violation of Section 10 and Rule 10b-5 of the Securities Exchange Act of 1934. CNHLP sought $46,600,000 in compensatory damages and $50,000,000 in exemplary damages on each count. A jury rejected CNHLP's claims and awarded DMI $4,580,325.37 in damages, interest, attorney's fees, and costs on its counterclaim. This was the amount that CNHLP owed on its promissory note to DMI.

In late 1978, DMI foreclosed upon its deed of trust covering 4,552 acres (excluding 947 acres in Sections A, B, C, D) for a bid price of $2,270,000. On August 13, 1980, CNHLP's trustee conveyed the 4,725 acres identified in the warranty deed of St. Charles City (less the 947 acres in Sections A, B, C, D) to DMI by quit claim deed for $2,500. In 1982, CNHLP's trustee executed another quit claim deed conveying the 4,725 acres (less the 947 acres in Sections A, B, C, D) with various additional lots to DMI for $16,500.

In October and November of 1978, DMI foreclosed on the deed of trust executed by the plaintiff. DMI and the plaintiff subsequently entered into an agreement dated January 31, 1979, which waived any procedural irregularities in the foreclosure proceedings provided that (1) DMI would bid in the property itself at the sale and

(2) DMI would hold title in trust for the plaintiff pending the outcome in the litigation. In entering into the agreement, DMI and the plaintiff attempted to anticipate potential results of the litigation. CNHLP was not given notice of or a party to the foreclosure proceedings or agreement.

On July 13, 1978, the plaintiff filed a bill of complaint against CNHLP, the partners of CNHLP and DMI praying for rescission of the sales contract, promissory note, and deed of trust. The plaintiff also prayed for a refund of the purchase price paid and $5,000,000 in punitive damages. The trial court rules that DMI as the assignee of the sale contracts for the lots in Crows Nest Harbour acquired the right to receive payments on the plaintiff's promissory note. The trial court also ruled that the promissory note was a negotiable instrument and that DMI took the notes for value without notice of claims and defenses. The trial court subsequently dismissed DMI from the case. The Supreme Court of Virginia affirmed the trial court's ruling and DMI's dismissal from the case. *Marriott v. Harris*, 235 Va. 199, 220-227, 368 S.E.2d 225, 235-39 (1988).

In 1979, DMI conveyed land and various unencumbered lots in Crow's Nest Harbour to Charles F. and Virginia N. Vanberg for $4,400,000. On February 25, 1982, DMI executed an Option Agreement with the Vanbergs. The Vanbergs obtained the right to purchase certain unplatted lots for $736,000. Additionally, DMI executed an Option Agreement giving the Vanbergs the right to purchase all of DMI's interest in Sections A, B, C, and D of Crow's Nest Harbour. By agreement of the parties on February 15, 1979, the term of the option was extended to February 15, 1989.

The Vanbergs assigned the option to Warren K. Montouri, Trustee. On February 14, 1989, Montouri exercised the option and paid $1,064,000 to DMI. On May 11, 1989, Montouri moved this Court to partially dissolve the decree of injunction entered on May 6, 1988, and for leave to intervene as a party-defendant. On May 15, 1989, the Court granted Montouri's motion to intervene but denied DMI the authority to convey title to the lots to Montouri. On February 2, 1990, the plaintiff and the Marriott-defendants filed a Petition for Entry of a Decree Confirming the Stipulation of Settlement between the parties.

## II. *The Court's Ruling*

As a preliminary matter, the Court holds that CNHLP granted DMI a security interest in the promissory note and deed of trust executed by the plaintiff. A review of the provisions of the Loan Agreement of March 30, 1973, confirms the Court's finding. Paragraph 6(a) of the Loan Agreement provides that "[t]he Borrower hereby grants to the Lender as the secured party a security interest in all contracts and/or Notes on lots sold in the Project and more fully set forth in Paragraph 52 hereunder . . . ." Paragraph 52(c)(1) further provides that:

> [t]here shall be granted to Lender a first conditional assignment of all lot sales contracts and promissory notes secured by purchase money mortgages owned by Borrower as of the date of the closing of the Loan which represent the unpaid balance of the purchase price from the sale of lots within the property described in Exhibit "A."

DMI and CNHLP specifically indicated in the Loan Agreement that the plaintiff's promissory note and deed of trust were to be additional security for the repayment of the loan. Paragraph 6(b) provides that "[t]he security interest created herein is given as additional security for the payment to the Lender of all indebtedness evidenced by and according to the terms of the Note . . . ." Paragraph 52(c)(5) states that "[u]pon the payment of the entire outstanding principal amount of the Loan . . . Lender shall reassign to Borrower all of the aforesaid contracts and promissory notes then held by Lender as additional security for the Loan."

The parties also provided that CNHLP would take all action necessary to perfect DMI's security interest in the plaintiff's promissory note. *See* Loan Agreement of March 30, 1973, para. 6(c), p. 4. As a result and as its mode of perfecting DMI's security interest, CNHLP pledged and transferred possession of the plaintiff's promissory note and deed of trust to DMI. *See* Va. Code Ann. § 8.9-304(1), (4) and (5) (Supp. 1990). The Court can come to no other conclusion but that CNHLP granted

DMI a security interest in the plaintiff's promissory note and deed of trust. Indeed, DMI recognizes the creation of an Article 9 security interest in its briefs submitted to the Court.

DMI's security interest in the plaintiff's promissory note and deed of trust clearly falls under Article 9 of the Uniform Commercial Code as adopted by Virginia. *See* Va. Code Ann. §§ 8.9-102(3), Comment 4 to 8.9-102, 8.9-104(j) and Comment 2 to 8.9-104 (Supp. 1990). The plaintiff and the Marriott-defendants do not contest the validity or perfection of DMI's security interest. It is also without doubt that CNHLP defaulted on its loan obligation under the Loan Agreement. *See* Loan Agreement of March 30, 1973, para. 36, p. 17. As a result, the Court is left to determine whether DMI properly enforced their security interest in the plaintiff's promissory note and deed of trust.

In order to analyze this issue, the Court believes that it is essential to identify the parties to the transaction. DMI is a secured creditor with respect to CNHLP. CNHLP is the grantor of the security interest and the debtor with respect to DMI. The plaintiff is a debtor as to CNHLP and the obligor on a promissory note with respect to both CNHLP and DMI. The plaintiff has no formal Article 9 relationship with respect to DMI in the absence of a default by CNHLP. For example, the plaintiff is an obligor on an instrument with respect to DMI on the default of CNHLP.

As to the default of CNHLP, DMI had a number of remedies to pursue in order to protect its interest. In general, "a secured party [on the default of the debtor] has the rights and remedies provided in [§ 8.9-501 *et seq.*], and except as limited by subsection (3), those provided in the security agreement. He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure." Va. Code Ann. § 8.9-501(1) (Supp. 1990).

In the Loan Agreement, DMI and CNHLP spoke directly to the issue of a default by the borrower. Indeed, DMI's remedies under the Loan Agreement are, to a great extent, parallel to or contingent on the remedies provided under Article 9. First, CNHLP was authorized to collect and retain all payments made by the plaintiff on his promissory

note. CNHLP's right to retain payments was contingent on the partnership not being in default on their obligation to DMI. *See* Loan Agreement of March 30, 1973, para. 6(a), p. 3. When and if CNHLP defaulted, DMI was entitled to collect and retain all payments made by the plaintiff on his promissory note.

Article 9 provides this same right to the secured creditor on the default of the debtor. *See* Va. Code Ann. Section 8.9-502(1) (Supp. 1990). Under § 8.9-502(1), DMI was entitled upon CNHLP's default to notify the plaintiff to make all payments on his promissory note to DMI. Section 8.9-502(1) states that "[w]hen so agreed and in any event on default, the secured party is entitled to notify . . . the obligor on an instrument to make payment to him . . . ." *Id.*

Second, DMI had the option of selling and disposing of the plaintiff's promissory note and deed of trust at a public or private sale without notice to CNHLP except as provided by the Uniform Commercial Code. Paragraph 6(d) of the Loan Agreement provides that:

> [t]he Borrower further agrees that should it fail to make payment as provided in the Notes, or if a default, as set forth elsewhere herein, be made of any obligation or covenant of the Borrower herein contained, or hereby secured, or in any of the terms and conditions of the Mortgage, *then the Lender may, at its option, sell and dispose of the Contracts and/or Notes and other property herein secured and assigned at public or private sale without any previous demand of performance or notice to the borrower of any such sale whatsoever, except as provided under the Uniform Commercial Code* . . . . (Emphasis added.)

Paragraph 6(e) reiterates DMI's right to dispose of the plaintiff's promissory note at a public or private sale by providing that:

> [a]t any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Contracts and/or Notes and other property

> may be sold en masse or separately, at the same or different times, at the option of the Lender or its assigns. *Such sale may be public or private, with notice as required by the Uniform Commercial Code* . . . . (Emphasis added.)

The provisions of the Loan Agreement are consistent with § 8.9-504. *See* Va. Code Ann. § 8.9-504 (Supp. 1990). Under § 8.9-504, a secured creditor is entitled to enforce his security interest through foreclosure by sale of the collateral. The one caveat to the secured creditor's sale of the collateral is that the sale must be commercially reasonable in all respects.

Section 8.9-504(3) provides that:

> [d]isposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale.

*Id.* (Emphasis added.)

The third remedy of the secured creditor is "to reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." Va. Code Ann. § 8.9-501(1) (Supp. 1990). *See also* § 8.9-501(5) and Comment 6 to § 8.9-501 (Supp. 1990). A judicial sale pursuant to a judgment and execution is one of the methods of enforcing a security interest which is contemplated by §§ 8.9-501(1) and (5). The proce-

dure used by the secured creditor in obtaining and executing on a judgment is determined by the law of the jurisdiction.

DMI failed to utilize any of the remedies in the Loan Agreement or in Article 9 to enforce its security interest in the plaintiff's promissory note and deed of trust. Indeed, DMI does not suggest in their memorandum that they enforced their security interest pursuant to any of these remedies. Rather, DMI contends that it was entitled to enforce its security interest in the plaintiff's promissory note and deed of trust outside of the provisions of Article 9.

Initially, DMI asserts that its security interest became perfected on the default of CNHLP. As a result, DMI became the holder of the deed of trust and a secured creditor with respect to the plaintiff. There are a number of problems with DMI's position. First, the plaintiff never affirmatively granted DMI a security interest or any interest in his promissory note and deed of trust. The plaintiff is merely an obligor on an instrument which DMI has been granted a security interest in by CNHLP. DMI is a secured creditor only with respect to CNHLP.

Second, "perfection" is a term of art under Article 9. *See* Va. Code Ann. § 8.9-301 and Comment 1 to § 8.9-301 (Supp. 1990). The importance of "perfection" is that it maximizes the protection that a secured creditor gets under Article 9. "Perfection" relates to the priority that a secured creditor has with respect to other secured or unsecured creditors having an interest in the same property. *See* Va. Code Ann. §§ 8.9-301, 8.9-312 (Supp. 1990). The function of "perfection" is to put third parties on notice of a possible security interest claimed by the creditor in the property. DMI's "perfection" of its security interest did not vest in them the rights of a holder or a secured creditor with respect to the plaintiff.

DMI then contends that as a secured creditor with a security interest in both personal and real property, they are entitled to elect to proceed against the personal property under Article 9 or against the personal and real property under the statutory foreclosure laws of Virginia. Section 8.9-501(4) provides that:

> [i]f the security agreement covers both real and personal property, the secured party may

> proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply.

Va. Code Ann. § 8.9-501(4) (Supp. 1990). There are again several problems with DMI's position. First, DMI's authority does not support their position. *See, Wynn v. Adams County Bank*, 761 P.2d 234, 7 U.C.C. Rep. Serv. 2d 593 (Co. App. 1988); *United States v. Kennedy*, 256 Ga. 345, 348 S.E.2d 636, 2 U.C.C. Rep. Serv. 2d 750 (1986); *Monroe Capital Corp. v. Pom-Pom Lunch & Rest., Inc.*, 4 U.C.C. Rep. Serv. 511 (N.Y. Supp. 1967).

In *Wynn v. Adams County Bank*, the Bank loaned funds to Wynn and Furniture Warehouse Sales of North Broadway, Inc., 761 P.2d at 234-35, 7 U.C.C. Rep. Serv. 2d at 594. In return for each loan, the plaintiffs granted the defendant a security interest in furniture, fixtures, equipment, and inventory. *Id.* The plaintiffs also assigned to the defendant its right to rental receipts on a piece of property and its leasehold interest in another piece of property. *Id.*

The plaintiffs argued that the defendant was required either to foreclose under C.R.C.P. 120 or to bring an unlawful detainer action under § 13-40-101 C.R.S. (1987 Repl. Vol. 6A). The court disagreed and stated that the "Defendant had the option to proceed to enforce its personal property remedies under Article 9 of the U.C.C." *Id.*, 761 P.2d at 235, 7 U.C.C. Rep. Serv. 2d at 595.

In *United States v. Kennedy*, Farmers Home Administration (FmHA) made three loans to Daniel S. Kennedy. 256 Ga. at ---, 348 S.E.2d at 636, 2 U.C.C. Rep. Serv. 2d at 750-51. In return, Daniel executed a promissory note and a security agreement covering chattels and crops for each of the loans. *Id.* In order to induce FmHA to make the loans to their son, Daniel's parents endorsed Daniel's promissory notes and gave FmHA as security for the debt a second deed of trust covering real property they owned in Georgia. *Id.* Daniel defaulted on his obligation to FMHA. *Id.* FmHA subsequently sold the personalty in which it had a security interest without notice to Daniel or

his parents. *Id.* FmHA then proceeded to foreclose on the real property of Daniel's parents. *Id.*

The court found that FmHA had not proceeded with its rights and remedies as to real property with respect to the personal property of Daniel and the real property of his parents. *Id.*, 256 Ga. at ---, 348 S.E.2d at 638, 2 U.C.C. Rep. Serv. 2d at 753. Therefore, the court concluded that:

> where a sale of collateral occurs without notice, in violation of OCGA § 11-9-504(3), the bar against collection of a deficiency upon the debt secured by such collateral prevents a creditor holding a claim against a guarantor secured by real property from proceeding against the real estate to collect the balance remaining after a commercially unreasonable sale of the personalty. *Id.*

In *Monroe Capital Corp. v. Pom-Pom Lunch & Rest., Inc.*, the court did not set forth a description of the facts which gave rise to this litigation in its decision. 4 U.C.C. Rep. Serv. 2d at 511. The court held that "the remedy of the plaintiff Monroe Capital Corporation [wa]s (1) to reduce its claim to judgment, or (2) foreclose its interest by any available procedure." *Id.* at 512.

The cases cited by DMI are factually distinct from the case at hand. In each of the cases, the court was confronted with a secured creditor and debtor. In *United States v. Kennedy*, Daniel Kennedy's parents, as guarantors of the loans and the grantor of the second deed of trust, were for all intents and purposes a debtor with respect to FmHA. 256 Ga. at ---, 348 S.E.2d at 636, 2 U.C.C. Rep. Serv. 2d at 751. In the case at hand, DMI is the secured creditor and CNHLP is the debtor. The plaintiff is merely an obligor on an instrument which is in the possession of DMI and is in no way responsible for CNHLP's indebtedness to DMI. Indeed, the Court finds that the status of the plaintiff's promissory note is irrelevant with regard to DMI's enforcement of its security interest.

Let us assume for a moment that CNHLP was in default on their obligation to DMI but that the plaintiff was current on its obligation to CNHLP. DMI cannot plausibly

contend that it is entitled to foreclose on the property under the plaintiff's deed of trust. DMI's remedy is twofold in this situational. DMI is entitled under the Loan Agreement and § 8.9-502(1) to collect and retain all payments made by the plaintiff. DMI also has the option of selling and disposing of the plaintiff's promissory note and deed of trust at a public or private sale under both the Loan Agreement and § 8.9-504(3). The one caveat to this option is that DMI must give the requisite notice to CNHLP.

Let us assume in the alternative that CNHLP was current on their obligation to DMI but that the plaintiff was in default on its obligation to CNHLP. DMI cannot realistically argue that it is entitled to foreclose on the property under the plaintiff's deed of trust. DMI and CNHLP specifically provided for this contingency in the Loan Agreement. Paragraph 52(c)(2) provides that:

> [i]n the event any of the aforesaid contracts or promissory notes which are conditionally assigned to Lender by Borrower as additional security for the Loan is in default . . . Lender shall have the right to reassign each such contract and promissory note which is in default as aforesaid to Borrower and receive from Borrower the full amount charged against the Loan by Lender which was based upon such contract or promissory note less any payments received by Lender on the contract or promissory note . . . . Borrower shall have the right, in lieu of payment to Lender of cash, as aforesaid, to conditionally assign in substitution, other lot sales contracts and promissory notes then owned by Borrower . . . .

A default by the plaintiff on its obligation to CNHLP is not an event which automatically triggers a default on the part of CNHLP. *See* Loan Agreement of March 30, 1973, para. 36, pp. 17-19. There does not exist within these two scenarios a relationship between DMI and the plaintiff which is governed by § 8.9-501(5).

An analysis of the cases also reveals that the debtor is the person who granted an interest in real property to the secured creditor. In *Wynn v. Adams,* the plaintiffs

assigned the defendant a leasehold interest in real property. 761 P.2d at 234-35, 7 U.C.C. Rep. Serv. 2d at 594. In *United States v. Kennedy*, the guarantor granted FmHA a second deed of trust on real property to secure the loan to the debtor. 256 Ga. at ---, 348 S.E.2d at 636, 2 U.C.C. Rep. Serv. 2d at 751.

In the case at hand, the extent of CNHLP's interest was a chose in action. The plaintiff's deed of trust represented the security for the payment of the debt. *Larchmont Homes, Inc. v. Annandale Water Co.*, 201 Va. 178, 181, 110 S.E.2d 249, 251 (1959) (citing Black's Law Dictionary (4th ed.) p. 503). CNHLP's interest was a lien on the real property. *Interstate RR. Co. v. Roberts*, 127 Va. 688, 692, 105 S.E. 463, 464 (1920). The Plaintiff's deed of trust vested the legal title to the property conditionally in CNHLP's trustees. CNHLP had no estate in, or right of possession to, the trust property by virtue of the plaintiff's deed of trust. *Augusta Nat'l Bank v. Beard*, 100 Va. 687, 693-94, 42 S.E. 694, 696 (1902). The plaintiff was the person entitled to sell or manage the property. *See, Lowry v. Gills*, 143 Va. 79, 129 S.E. 269 (1925); *Hale v. Horne*, 62 Va. (21 Gratt.) 112 (1871). CNHLP was not vested with legal title in the property. CNHLP merely had a lien on the plaintiff's property.

Second, DMI's actions effectively nullified the policy concerns behind the notice requirements in § 8.9-504(3). CNHLP did not participate in the foreclosure proceedings or the stipulation of January 31, 1979, between DMI and the plaintiff. CNHLP was unrepresented and unprotected in the foreclosure proceedings.

Section 8.9-504(3) clearly indicates that a debtor is entitled to notice with respect to any public or private sale of the collateral. *See* Va. Code Ann. § 8.9-504(3) (Supp. 1990). There are a number of policy concerns underlying the notice requirement. If the collateral is not bringing a reasonable price, the debtor may be able to buy it at the sale, exercise his right of redemption or find other purchasers to bid for the property. *United States v. Kennedy*, 256 Ga. at ---, 348 S.E.2d at 637, 2 U.C.C. Rep. Serv. 2d at 752 (citing *Reeves v. Habersham Bank*, 254 Ga. 615, 621, 311 S.E.2d 589, 596 (1985)). The debtor also has the opportunity to challenge the aspects of the disposition. *Id.*

All of these, of course, further the same ultimate goal: they allow the debtor to minimize any deficiency for which he will be liable by maximizing the sale price of the collateral. In fact, the statute simply creates a rule of fairness. It allows the debtor, whose protection from liability for a deficiency is the value of the collateral, to maintain that protection. *Id.*

DMI's actions effectively prevented CNHLP from protecting its interest.

### III. *Conclusion*

DMI was a secured creditor with respect to CNHLP. When CNHLP defaulted on their obligation, one of DMI's remedy was to sell the plaintiff's promissory note and deed of trust in accordance with the Loan Agreement and/or Section 8.9-504(3). If DMI bought the plaintiff's promissory note and deed of trust at a sale, it would be a creditor of the plaintiff. If the plaintiff subsequently defaulted on its obligation under the promissory note, DMI was entitled to foreclose on the property.

The Court holds that DMI failed to properly enforce the security interest granted to it by CNHLP. The Court's holding today is consistent with the fairness inherent in the default procedures of Article 9 of the Uniform Commercial Code.

In this case, the Court must set aside the foreclosures and grant the plaintiff's and the Marriott-defendants' petition. *See, e.g., McClure Grocery Co. v. Watson*, 148 Va. 601, 139 S.E. 288 (1927) (sale set aside because of fraud).

For the foregoing reasons, the Petition of the plaintiff and the Marriott-defendants for Entry of a Decree confirming the Stipulation of Settlement between the parties is granted.