# Richmond.

FRAYSER'S ADM'R V. R. AND A. R. R. CO., AND ALS.

JANUARY 28th, 1886.

1. TRUST DEEDS—*Trust subject—Profits.*—The law is now well settled that until possession of the trust subject is taken by the trustee, or by proper judicial authority, the grantor is entitled to the profits. When possession is thus taken, the trustee becomes entitled to the profits, but only to such as thereafter accrue.  *Gibert* v. *W. C. V. M. and G. S. R. R. Co.*, 33 Gratt. 645.

2. RAILROADS—*Trust deeds—Receivers—Fi. fa.'s—Case here.*—Railroad is under trust to pay certain debts. At suit of trust creditors, receiver is appointed and ordered; after executing required bond, to take possession of and carry on the railroad. Between such appointment and the execution of said bond, a *fi. fa.* against the railroad company is placed in sheriff's hands ; and there are funds in bank to the credit of the suit, representing the earnings, &c., of the road.

HELD :

> The *fi. fa.* creditor is entitled to have those funds applied to satisfy his debt in preference to the trust creditors.

Appeal from decree of circuit court of city of Richmond, entered June 16, 1884, on petition of William Ferguson, administrator *d. b. n.* of D. A. W. Frayser, deceased, filed in cause of *Ashbell Green and Thomas S. Bocock, Trustees, &c.*, v. *Richmond and Alleghany Railroad Company*, intervening to ask payment of a judgment against said company. Petitioner obtained said judgment June 11, 1883, and placed the execution in the hands of the sheriff of said city 29th June, 1883, at which time there was in bank in said city to the credit of

said cause, certain funds which represented the earnings and balances due said company. By deed dated 27th April, 1881, the said company's railroad, &c., had been conveyed to said Green and Bocock, trustees, in trust to secure certain debts. At the suit of the trust creditors an order was entered June 23, 1883, appointing Lawrence Myers and Decatur Axtell, receivers, and directing them to take possession of the mortgaged premises and to carry on the road, but requiring them *first* to execute certain bonds, which were not executed until June 30, 1883. On hearing petition, the circuit court decided that the said order sequestrated the property of the company, including said funds, and that the lien of said execution did not attach thereto. From this decree the said administrator appealed to this court.

*W. W. and B. T. Crump,* for the appellant.

*W. W. Gordon, I. H. Carrington,* and *Johnston, Williams & Boulware,* for the appellees.

LEWIS, P., delivered the opinion of the court.

By the deed of April 27, 1881, the company conveyed to trustees all its property, including "all tolls, income, issues, and profits to be had or derived" therefrom, to secure the payment of certain bonds and the interest thereon. It was stipulated in the deed that the company should retain possession of the property until default in the payment of the principal or interest of the bonds secured thereby, and that in case of continued default for three months after demand of payment, it should be lawful for the trustees to take possession of the property, and to receive the rents, tolls, income and profits thereof.

Default having been made, the bill to foreclose the mortgage, and for the appointment of a receiver, was filed by the trustees, Bocock and Green, on the 23d of June, 1883. On the same day an order was entered, appointing Lawrence Myers and Decatur Axtell receivers "of all and singular the mortgaged premises, * * including the entire line of railway, the canals, docks, franchises, lands, books, papers, money, and all other property of the company." And the order required the receivers, before entering upon the performance of their duties, each to execute a bond in the penalty of one hundred thousand dollars, with condition for the faithful performance of their duties as such receivers, to be approved by the judge of the court.

On the 11th of June, 1883, the appellant, as administrator of D. W. A. Frayser, deceased, recovered a judgment against the company in the same court for $4,700, with interest and costs. On the 29th of the same month an execution on this judgment went into the sheriff's hands; which, on the same day, was returned, "no effects."

On the following day—to-wit, on the 30th of June, the required bonds of the receivers were approved and filed; and thereupon they took possession of the property and entered upon the performance of their duties.

It is claimed by the appellant, and not denied, that at the time the bill was filed there was a fund in the treasury of the company, derived from the operation of the road, which was more than sufficient to satisfy the appellant's execution. This money was embraced in the order of the 23d of June; which enjoined the company from disposing of any part of its property until possession was taken by the receivers, and, in the meantime, the company was ordered to deposit all moneys received by it in the First National Bank of this city to the credit of the cause.

Under this order the company deposited in bank all moneys received by it, including the fund on hand at the time the bill was filed; and the important questioned to be determined is, whether the lien of the appellant's execution extended to that fund, though deposited in bank to the credit of the cause when the execution went into the sheriff's hands? We are of opinion that it did.

The law is now well settled that until possession of the mortgaged property is taken by the mortgagee, or proper judicial authority, the mortgagor is entitled to the profits. When possession is thus taken the mortgagee becomes entitled to the profits, but only to such as thereafter accrue. 1 Jones on Mortgages (3d ed.), sec. 670; *Williamson's Adm'r* v. *W. C., V. M. & G. S. R. R. Co.*, 33 Gratt. 624; *Gibert* v. *Same*, Id. 645.

In the last mentioned case, Judge Staples, speaking for the court, said: "So long as the mortgagor is permitted to remain in possession of the property he is entitled to receive and apply to his own use the income and profits of the mortgaged estate. And this is true, although the mortgage, by its terms, covers the rents and profits; and although the creditor is authorized to take possession upon default made in the payment of the debt. As was said by Lord Mansfield, in *Chenning* v. *Black*, 3 Doug. 391, 'Until the mortgagee takes possession the mortgagor is owner to all the world, and entitled to all the profits made.'"

To the same effect are the decisions of the Supreme Court of the United States. In *Gilman* v. *Ill. & Miss. Tel. Co.*, 91 U. S. 603, a railroad company executed a mortgage on its property and franchises, "together with the tolls, rents, and profits to be had, gained, or levied therefrom." Upon a bill filed by the trustees to foreclose the mortgage, but not asking for the appointment of a receiver, the court decreed a sale; and in a subsequent controversy between a creditor of the company and

the mortgagees it was held that the company was entitled to the earnings of the road until the sale was actually made.

A similar question arose and was decided in the same way in *American Bridge Co.* v. *Heidelback*, 94 U. S. 798. "The mortgage," said the court, "could have no retrospective effect as to previous income and earnings. The bill of the trustees does not affect the rights of the parties. It is an attempt to extend the mortgage to what it cannot be made to reach. Such a proceeding does not create any new right. It can only enforce those which exist already. The bill of the trustees is as ineffectual as if the fund were any other property—real, personal, or mixed—acquired by the mortgagor *aliunde*, and never within the scope of the mortgage."

It is contended, however, that the effect of the order of the 23d of June was to sequestrate the fund then on hand, and thus to withdraw it from the reach of execution creditors. But we cannot concur in this view. The bill is not a general creditor's bill, but was filed merely to foreclose the mortgage and for the appointment of a receiver, and, consequently, the rights of the plaintiff cannot extend beyond the mortgaged property, nor could the decree divest or impair the rights of those persons whose claims to the fund are unaffected by the mortgage. *Noyes* v. *Rich*, 52 Me. 115.

The result is that the money on hand, representing in part the earnings of the road at the time the bill was filed, though afterwards deposited in bank to the credit of the cause, continued to be the money of the company, and hence became subject to the lien of the appellant's execution. For, by the comprehensive terms of the statute, the lien of a *fi. fa.*, from the time the writ is delivered to the officer to be executed, extends to all the personal estate of the judgment debtor—although not levied on *nor capable of being levied on*—with certain enumerated exceptions not material to the present case. And the lien thus

acquired, continues until the right of the creditor to levy the writ under which the lien arises, "or to levy a new execution on his judgment, ceases, or is suspended by a forthcoming bond being given and forfeited, or by a *supersedeas* or other legal process." Code 1873, ch. 184, secs. 3, 4; *Puryear* v. *Taylor*, 12 Gratt. 401; *Charron* v. *Boswell*, 18 Id. 216; *Trevilian's Ex'ors* v. *Guerrant's Ex'ors*, 31 Id. 525.

In *Edwards* v. *Edwards*, 2 L. R., Chy. Div. 291, after an order had been made appointing a receiver, but before the receiver had given the required security and taken possession, certain goods of the defendant were taken in execution at the instance of a judgment creditor. The vice-chancellor held the taking of the goods to be a contempt of court, and that no rights were acquired thereby. But on appeal this order was reversed. In delivering judgment, James, L. J., said: "A receiver becomes such on giving security. When he has done that he can take possession. It would be very serious to hold that he can take possession before giving security. There is no reason to depart from the plain meaning of the words of the order which appoints him receiver conditionally on his giving security. * * I am of opinion, therefore, that no contempt has been committed; that the execution creditor is right, and that the order of the vice-chancellor must be reversed." Mellish, L. J., concurred in reversing the order, but expressed the opinion that "if the receiver had really taken possession before the goods were seized, although he had not been completely appointed receiver," the case would have been different. See also High on Receivers, sec. 121; Jones on Railroad Securities, sec. 493; Kerr on Receivers, p. 168, *et seq.* The present case is stronger for the execution creditor than the case last mentioned, since here the receivers are not entitled, in any event, to the earnings of the road which accrued before the bill was filed. *Dow* v. *Memphis & L. R. R. Co.*, 20 Fed. Rep. 768.

It follows that the circuit court erred in denying the prayer of the appellant's petition for satisfaction of his debt out of that fund under the control of the court. And for these reasons, and without deciding any other question discussed at the bar, the decree must be reversed.

Decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the lien of the execution which issued on the judgment in favor of the appellant on the 29th of June, 1883, in the proceedings mentioned, extended to all moneys in bank to the credit of the cause, representing the earnings of the road which accrued before the receivers took possession and entered upon the performance of their duties—to-wit, on the 30th of June, in the year aforesaid, and that, therefore, the said decree is erroneous. Wherefore it is considered by the court that the same be reversed and annulled, and that the appellees pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here; and this cause is remanded to the said circuit court, with instructions to enter such decree, as may be proper and necessary for payment of the appellant's debt, and for which execution issued as aforesaid.

Which is ordered to be certified to the said circuit court of the city of Richmond.

DECREE REVERSED.