Staunton.

INTERSTATE RAILROAD COMPANY V. ROBERTS, CLERK.

September 16, 1920.

1. RECORDING ACTS—*Recordation Tax—Deeds.*—Section 13 of the Tax Bill (Code of 1919, page 3087) only imposes a recording tax on deeds conveying property, and therefore a paper, although technically speaking a deed because it was a writing signed, sealed and delivered, is not within the intendment of that part of the statute where it does not purport to convey anything.

2. MORTGAGE—*Essence of a Mortgage.*—The essence of a mortgage or deed of trust is that it creates a lien on property to secure a debt.

3. RECORDING ACTS—*Registration Fees—Tax on Conveyances—Section 13 of the Tax Bill—Case at Bar.*—A railroad company presented a clerk of court with two papers of the same date, under one cover, for recordation. The first paper appeared upon its face to be a lease of coal cars from a trust company to the railroad company for a consideration payable in installments. The payments were termed rentals, but the lease provided for a formal transfer of the title as soon as all of the payments had been made. The second paper, attached to the former and expressly referring to it as a contemporaneous instrument, provided for the issue and delivery to a banking company of interest-bearing certificates, upon deposit by the banking company with the trust company of the money necessary to pay for the cars. As the two papers were essentially one, they may be construed as falling within the terms of the tax bill (Section 13, Code of 1919, page 3087), either as a mortgage or as a "contract or agreement relating to the sale of rolling stock or equipment." The latter construction is the more natural. Under neither construction was the clerk entitled to collect a separate tax on each paper.

4. TAXATION—*Construction of Statutes.*—In the construction of tax acts, it is the duty of the court to resolve doubts in favor of the taxpayer.

Error to a judgment of the Circuit Court of Wise county in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Bullitt & Chalkley,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile* and *E. M. Fulton,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

The Interstate Railroad Company presented to the clerk of the Circuit Court of Wise county for recordation two papers under one cover, each dated February 20, 1920, to-wit:

(1) The first paper appeared upon its face to be a lease from the Fidelity Trust Company, trustee, to the railroad company of 500 coal cars at a total price of $1,100,000, of which $200,000 was payable in cash and the residue was to be paid in ten subsequent annual installments of $90,-000 each, with interest. All of these payments were termed rentals, but the lease provided for a formal transfer of the title as soon as all of the payments had been made.

This paper, containing also numerous other provisions common to instruments of that character but not material here, was duly signed, sealed and acknowledged by both parties.

(2) The second paper, attached to the former and expressly referring to it as a contemporaneous instrument, was an agreement between the same parties which recited that Brown Brothers and Company, Philadelphia bankers, had

87

secured subscriptions to the amount of $900,000 "to be supplied towards the payment of the purchase price of the railroad equipment and rolling stock particularly described in said indenture of lease," and obligated the trust company, when the amount of money necessary to pay for the cars had been deposited with it, to issue and deliver to Brown Brothers and Company 900 interest-bearing certificates for $1,000 each, and to collect and apply to the payment of such certificates the so-called rentals stipulated for in the former paper, and, in case of default in payment thereof by the railroad company, to take possession of and sell the cars and apply the proceeds to the payment of the certificates. This instrument, like its companion, was signed, sealed and acknowledged by both parties.

The two papers in question are rather prolix in their provisions and recitals. The foregoing is a sufficient statement of their substantial purport. Reading the two papers together, it is perfectly apparent that the railroad company desired to purchase 500 coal cars and was willing to pay therefor the price of $1,100,000; that the cars were procured from a manufacturing company through the financial agency and assistance of the trust company and Brown Brothers and Company; that the railroad company paid $200,000 in cash, and agreed to pay the additional sum of $900,000; that the two papers in question were in furtherance of one and the same transaction, and were essentially inter-dependent; that while the first paper might have appeared on its face to be complete in itself, the second showed that it was not; that both were essential to effectuate the transaction, and that neither party would have executed and delivered either paper without the execution and delivery of the other. Exactly the same purpose could have been more simply accomplished if the terms of the agreement had all been embodied in one paper, but the substance and effect

of the arrangement was not altered by the unnecessarily circuitous method adopted.

The clerk of the Circuit Court of Wise county, construing the two papers as essentially one contract, was of opinion that the recordation tax was only the sum of $1,100, computed upon the total consideration of $1,100,000, and that no separate tax should be collected upon the agreement relating to the car trust certificates. He accordingly admitted the paper to record and accepted the sum of $1,100 as the proper amount of the tax. When the matter came to the attention of the Auditor of Public Accounts, however, he was of opinion that an additional tax of $900 ought to have been collected, and notified the clerk that he would be held liable accordingly in the settlement of his accounts. The clerk then brought this suit against the railroad company to recover the last named sum. A jury was waived and the court awarded the plaintiff a judgment for $900, to which this writ of error was allowed.

The position taken by the Commonwealth appears to be that the first paper being a contract relating to rolling stock is clearly subject as such under the provisions of section 13 of the tax bill, Code 1919, page 3087, to a tax on the total consideration amounting to $1,100, and that therefore "the only question for consideration is whether the second instrument referred to is subject to the usual tax upon being admitted to record."

This latter contention proceeds upon the assumption that the two papers are independent of each other in essential particulars, and the right to collect the tax on the second is sought to be sustained, not on the ground that the paper is one relating to rolling stock, but on the ground, first, that it is signed, sealed and delivered, and hence taxable *as a deed* under the above cited section of the tax bill; and, second, that it is a deed of trust or mortgage and taxable as such under that section.

[1] Technically speaking, the second paper is a deed because it is a writing signed, sealed and delivered, but it is not taxable as such under section 13 because that section only imposes a recording tax on deeds conveying property, and this paper does not purport to convey anything, and is clearly not within the intendment of that part of the statute.

[2] Nor can it standing alone be regarded as a mortgage or deed of trust, and taxable accordingly. The essence of a mortgage or deed of trust is that it creates a lien on property to secure a debt, and the second paper by itself is wholly ineffectual for that purpose, and constitutes a security for the certificates therein named only by virtue of its essential connections with the so-called lease. When read with the latter it does secure the debt and might be regarded as a mortgage.

[3, 4] The whole matter, therefore, may be summed up thus: The two papers are essentially one. There are only two aspects in which they may be construed as falling within the terms of the tax bill. The first is that when read together they constitute a mortgage. Viewed thus the tax would be computed on $900,000, the debt secured, and would amount to $900. The second and more natural view is that when read together they constitute a "contract or agreement relating to the sale of rolling stock or equipment" (tax bill, sec. 13), the tax being determined, as the clerk did it, upon the "amount contracted for in such contract or agreement." This conclusion is not only just and equitable in the result, but in our opinion is clearly in furtherance of the intention of the legislature. Even if we were in doubt upon the question, the result would be the same, since in that event, it would be our duty to resolve the doubt in favor of the taxpayer. *Commonwealth* v. *Hutzler*, 124 Va. 138, 97 S. E. 775.

The case of *Saville* v. *Virginia Railway & Power Co.*, 114

Va. 444, 76 S. E. 954, relied upon by the Commonwealth, is not in conflict with the views herein expressed. In that case, as expressly shown by Judge Keith in the course of the opinion, the supplemental mortgage upon which the additional tax was required was not contemporaneous with nor an essential part of the original mortgage.

The judgment complained of will be reversed, and a final order entered here in favor of the defendant company.

*Reversed.*