In the Matter of VIENNA PARK PROPERTIES, Debtor.

Bankruptcy No. 89 B 12967 (CB).

United States Bankruptcy Court, S.D. New York.

April 10, 1990.

James D. Glass & Associates, P.C., New York City (James D. Glass, Andrew B. Eckstein, of counsel), for debtor.

Stroock & Stroock & Lavan, New York City (Fred Hondara, Lisa Beckerman–Stenlake, of counsel), and Frank, Bernstein,

Conaway & Goldman, Baltimore, Md. (Harvey Lebowitz, Jay Shulman, of counsel), for Trustbank and United Postal Sav. Ass'n.

## DECISION ON DETERMINATION OF RENTS AND ESCROW MONIES

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

On November 21, 1989, Vienna Park Properties ("Vienna Park" or "Debtor") filed a voluntary petition seeking to reorganize under chapter 11 of the Bankruptcy Code (the "Code").

By motion, Trustbank Savings, F.S.B. ("Trustbank") and United Postal Savings Association ("United Postal") seek entry of an order pursuant to §§ 363(c), 363(e), and 361 of the Code to determine whether rents, income, receipts, revenue, issues, profits, and other income relating to real property of the Debtor are cash collateral as the property is subject to Deeds of Trust which contain an assignment of rent clause.

Facts:

Vienna Park purchased 300 seperate condominium units from Vienna Park Associates. In order to finance this purchase, Vienna Park obtained first Deeds of Trust financing from Congressional Mortgage Corp. ("Congressional") in the form of 300 seperate loans. Congressional granted 300 seperate Deeds of Trust Notes ("Notes"), secured by the Deeds of Trust, for the 300 seperate condominium units in Vienna Park South and Vienna Park North ("the Properties"). These Notes matured on June 22, 1989. All 300 Deeds of Trust were duly recorded in Fairfax County, Virginia, the county where the property is located. The Property is the Debtor's sole asset.

Each Deed of Trust and Note contains identical provisions except for the condominium unit number and dollar amount. Contained in the Deed of Trust is a rent assignment clause which reads:

As additional security hereunder, Borrower hereby assigns to Lender the Rents of the Property, provided that Borrower shall, prior to acceleration under Paragraph 18 hereof or abandonment of

the Property, have the right to collect and retain such rents as they become due and payable.

Deed of Trust Clause 20.

The Deeds of Trust also contain a clause entitled "Remedies Cumulative" which reads as follows:

All remedies provided in this Deed of Trust are distinct and cumulative to any other right or remedy under this Deed of Trust or afforded by law or equity and may be exercised concurrently, independently, or successively.

Deed of Trust Clause 12.

On August 6, 1984, Congressional assigned 162 of these Deeds of Trust along with the Notes to United Postal. The remaining 138 Deeds of Trust and Notes were assigned to Trustbank on the same day.

Each of the 300 Notes were to mature on June 22, 1989. The Notes contain an addendum which provided that the noteholder would renew the loans secured by the Notes for a two-year period provided that the Notes were not in default. Debtor negotiated with United Postal to renew the 162 Notes. Debtor and United Postal entered into an agreement for renewal and a letter was sent to this effect ("Letter of Agreement"). However, renewal of these Notes was never completed. In compliance with the Letter of Agreement for renewal of the Notes, Debtor sent United Postal payment for the July 1, 1989 monies due. However, no monies were paid after this date. As no additional monies were paid, United Postal sent Debtor a letter dated August 10, 1989, notifying Debtor that the Notes were in default (Exhibit D). The letter stated that the loans were now considered accelerated. In addition, United Postal sent a letter dated October 30, 1989 (Exhibit M) to Grady Management, Inc. ("Grady"), manager of all 300 condominium units, demanding rents for the 162 condominium units.

In late October 1989, United Postal commenced foreclosure sale proceedings in accordance with Virginia law by providing a notice of a Trustee's Sale to the Debtor, and United Postal commenced advertising for the 162 condominiums. The Debtor filed for bankruptcy on November 21, 1989, prior to the date scheduled for the foreclosure sales.

With respect to the 138 Notes held by Trustbank, Debtor negotiated with Trustbank for their renewal. Although an offer was made by Trustbank for the loan renewals, the offer expired on August 31, 1989. This offer was conditioned on Debtor making payment for July 1, 1989 while formal documentation for the offer was being processed. Prior to the offer's expiration, Trustbank and Debtor held further negotiations. However, the negotiations were not fruitful and no payments were made to Trustbank for July 1 nor August 1, 1989. Trustbank notified Debtor by letter dated August 10, 1989 (Exhibit I) that Debtor did not meet the conditions of renewal. Thereafter, the Notes were never renewed and matured as of June 22, 1989.

On October 30, 1989, Trustbank sent a letter to Grady demanding rents received from the 138 condominium units (Exhibit L). Trustbank also commenced foreclosure on the 138 condominium units. The foreclosure sale was stayed by the Debtor filing for bankruptcy on November 21, 1989.

Issue:

Does a mortgagee of Virginia property who is the holder of a deed of trust that includes a collateral assignment of rents provision, have any secured interest in rents collected by the mortgagor as of the time of default on the mortgage to present, where the mortgagee is not in possession of the property?

Discussion:

■ The starting point for this analysis is *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). According to *Butner*, a determination of the validity of an assignment of rents provision must be decided by reference to state law. *Id* at 57, 99 S.Ct. at 919. Section 552 of the Code is consistent with *Butner*. Its primary design is to permit creditors to take security interests in proceeds pursuant to applicable state law, such as U.C.C. Article 9 or whatever state law applies to security

interests in real property. Section 552 reflects Congress' historical concern that property rights usually should be controlled by state law instead of the "mere happenstance" of bankruptcy. *Matter of Village Properties*, 723 F.2d 441, 444 (5th Cir.1984). Since *Butner*, courts in dealing with the issue of rent assignments have noted its continuing validity. E.g. *In re Jenkins*, 13 B.R. 721, 723 (Bankr.D.Col. 1981); *rev'd on other grounds*, 19 B.R. 105, 107 (D.Col.1982); *In re Oak Glen R–Vee*, 8 B.R. 213, 216 n. 3 (Bankr.C.D.Cal. 1981); *In re Gaslight Village, Inc.* 6 B.R. 871, 874 (Bankr.D.Conn.1980); *In re Hellenschmidt*, 5 B.R. 758, 760 (Bankr.D.Col. 1980); *In re Wheeler*, 5 B.R. 600, 603 (Bankr.N.D.Ga.1980); *In the Matter of Jeffers*, 3 B.R. 49, 46 (Bankr.N.D.Ind.1980), see also *In re Huhn Construction Co. Inc.*, 11 B.R. 746 (Bankr.S.D.W.Va.1981). Of course, section 552(b) does permit a bankruptcy judge to deviate from state law "based on the equities of the case." 11 U.S.C. § 552(b).

Virginia law regarding the validity and effect of assignments of real estate rents has evolved over the years through common law. Recent cases dealing with the assignment of rent clauses have stated that possession is not necessary in order for these clauses to be in effect. The court in *In re Epco Newport News Associates*, 14 B.R. 990 (Bankr.S.D.N.Y.1981), construing Virginia law, has stated that Virginia is in the minority of states which subscribes to the "title theory". *Id* at 995. In a "title state", upon the mortgagor's default "the mortgagee is automatically entitled to possession of the property and to a secured interest in the rents." *In re Epco* at 995, citing *Butner* supra at 52.

Language substantially similar to that used in the assignment of rent clause found in the Deeds of Trust was analyzed by the Court of Appeals for the Fourth Circuit. In *Fidelity Bankers Life Ins. Co. v. Williams*, 506 F.2d 1242 (4th Cir.1974), the court held that where a mortgagor executed both a deed of trust and a supplemental assignment of rents, the mortgagee had an absolute right to possession of the encumbered property as well as to rents, and issues and profits immediately upon default by the mortgagor even though the mortgagor had not taken possession of the property. The Debtor in the case at bar, as in *Epco* and in *Fidelity* misconstrued the language used in the Deed of Trusts in insisting that Trustbank and United Postal had to take affirmative steps, in the form of possession, as a condition precedent to its entitlement to the rents from the secured property. To support this position Debtor relies on *Frayser's Adm'r v. R. and A.R.R. Co.*, 81 Va. 388 (1866). However, the court in *Frayser*, was not construing an assignment of rents clause, but rather was construing a clause which stipulated that the mortgagee may take possession of the property and receive rents three months after default. *Id.* at 389.

Debtor also cites *Clarke v. Curtis*, 42 Va. 289 (1844). Again, *Clarke* does not involve an assignment of rent clause but rather involved a suit to foreclose a deed of trust. It is clear from the cases that Debtor cites that where there is no assignment of rent clause; the creditor must obtain possession of the property before having rights to rents. In the case at bar, there is an express provision which gives the creditor an assignment of rents (Deed of Trust para. 18). As there is a provision which assigns rents, the court must construe the language of this assignment. Section 55–59 of the Virginia Code deals with how the deeds of trust are to be construed and specifies the rights of the parties. VA CODE ANN. § 55–59 (1950). The provisions of this section are controlling when the deeds of trust do not provide otherwise. *Colonial Iv. Co. v. Cherrydale Cement Block Co.*, 194 Va. 454, 73 S.E.2d 419 (1952). The statute states that "[e]very deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law ...". In the case at bar, the parties to the Deed of Trust contracted for the assignment of rent upon default. This assignment of rent is not in conflict with the statute which provides that "(1) [t]he deed shall be construed as given to secure

the performance of each of the covenants entered into by the grantor as well as the payment to the primary obligation." VA CODE ANN. § 55–59 (1950). Therefore, since the Deed of Trust expressly provides for the assignment of rent, this clause is controlling when construing the rights of the creditor.

Debtor claims that there is no supplemental agreement to the Deed of Trust assigning rents to the creditor, citing to *Epco* and *Fidelity*. However, there is no case law which supports the proposition that a supplemental document is required instead of having the provision written into the Deed of Trust itself. To construe the Deeds of Trust, Virginia law must be reviewed to determine the nature of the Debtor's interest in the property at the time of filing. The Virginia Code provides that upon default in payment of the indebtedness secured by the Deed of Trust, the secured creditor may accelerate the indebtedness and request the trustee under the Deed of Trust to execute a sale. The creditor or the trustee must notify the Debtor in writing of the acceleration and pending sale. VA CODE ANN. §§ 55–58, et seq. (1950). Creditor Trustbank notified Debtor of the loan default on August 10th and creditor United Postal notified Debtor of the loan default on September 19, 1989 respectively. At this point, the trustee holds legal title to the property conveyed in trust and the Debtor has an equitable right incident to every mortgage which allows the mortgagor to pay the indebtedness and require the secured creditor to reconvey the property free of the Deed of Trust lien. *In re Rolen*, 39 B.R. 260 (Bankr.W.D.Va. 1983) citing *Michie's Jurisprudence*, Mortgages and Deeds of Trust, §§ 177–184. An absolute assignment of rentals automatically transfers the right to such rentals when a specified condition occurs (e.g. default). An absolute assignment passes title to the rents instead of creating a security interest. *In re Ventura–Louise Properties*, 490 F.2d 1141 (9th Cir.1974). However, some courts have been reluctant to construe assignment of rents as absolute assignments. *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex.1981), citing *Simon v.*

*State Mutual Life Assur. Co.*, 126 S.W.2d 682 (Tex.Civ.App.—Dallas 1939). These courts usually view rent assignments as creating a security interest and are called lien theory states. These states only give the creditor a lien on rents as security for the debt rather than giving the creditor actual rights to receive the rent directly. However, Virginia is not among these lien theory states, considering itself a title state instead.

Issue of Cash Collateral:

The bankruptcy court must turn to state law to determine whether and at what time a mortgagee has interests in rents, because it is only at that time that it becomes "cash collateral". § 552(b). The rent is clearly cash collateral because Trustbank and United Postal individually notified the Debtor of the default on the Notes secured by the Deeds of Trust. This is the minimum that is required under Virginia Law. As such, United and Trustbank each perfected their interest in the rents of the property and is therefore entitled to such rents.

Conclusion:

Section 363 of the Bankruptcy Code does not create property interests, instead it protects parties with an interest in cash collateral. The section forbids the debtor in possession from using, selling, or leasing cash collateral under 363(c)(1) unless each entity with an interest in the cash collateral consents or the court, after notice and a hearing, authorizes such use pursuant to section 363. Noncash collateral can be disposed of in the ordinary course of business even if it is subject to another party's interest. A party can seek "adequate protection" if such property is to be used. § 363(c). In the instant case, there was no requirement that creditor take any affirmative action to perfect its absolute right to rents from the Properties after default. According to the terms of the Deed of Trust assignment, creditor was entitled to rents immediately upon default. Therefore, the fact that creditor failed to take possession of the property does not prevent creditor from asserting their rights given by the Deed of Trust.

Settle Order consistent with this decision on five (5) days' notice.