**In re VIENNA PARK PROPERTIES, a Limited Partnership, Debtor.**

**Bankruptcy No. 89-B-12967 (CB).**

United States Bankruptcy Court, S.D. New York.

Oct. 23, 1990.

**334**

Glass & Eckstein, P.C. by James D. Glass, Andrew B. Eckstein, New York City, for debtor.

Frank, Bernstein, Conway & Goldman by Harvey Lebowitz, Jay Shulman, Baltimore, Md., and Strook & Strook & Lavan by Fred S. Hodara, Lisa Beckerman–Stenlake, New York City, for Trust Bank Sav., FSB and United Postal Sav. Ass'n.

DECISION VACATING APRIL 10, 1990 DECISION ON DETERMINATION OF RENTS AND ESCROW MONIES

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

A motion for reconsideration (the "Fee Reconsideration Motion") of this Court's Order, dated August 7, 1990, granting counsel for Vienna Park Properties (the "Debtor") a first interim award of compensation and reimbursement of expenses (the "Fee Award") was made by Trustbank Savings F.S.B. ("Trustbank") and United Postal Savings Association ("United Postal"; Trustbank and United Postal, collectively, the "Secured Creditors"). This decision is issued pursuant to the Fee Reconsideration Motion and pursuant to this Court's *sua sponte* powers found in section 105(a) of the Bankruptcy Code (the "Code").

*Background*

The Fee Award was granted upon the application for such allowance, dated May 9, 1990, (the "Fee Application") of the Debtor's counsel. The Secured Creditors filed objections (the "Objections") to the issue as to whether, in light of this Court's decision on the Secured Creditors' motion to sequester the rents (the "Decision"), there were any unencumbered assets available for the Debtor's use to pay its administrative expenses. The reasonableness of the requested fees was not contested in the Objections.

Subsequent to the initial hearing and the submission of post-trial memoranda submitted by the parties, on the Fee Application, the Debtor commenced an adversary proceeding seeking a determination as to the extent and validity of the Secured Creditors' alleged claims against certain escrow funds (the "Escrow Funds") held by the Debtor's counsel (the "Escrow Funds Adversary"). The Debtor has moved for summary judgment in the Escrow Fund Adversary Proceeding; such motion is presently *sub judice* before this Court. The Secured Creditors are scheduled to file and serve their opposition to such motion on September 17, 1990 and a hearing thereon has been scheduled for September 25, 1990.

In connection with the Fee Application this Court entered an order granting Debtor's counsel a first interim allowance in the amount of Seventy–One Thousand Two Hundred Eleven and 96/100 ($71,211.96) Dollars in addition to the Sixty–Five Thousand Fifty–Seven and 83/100 ($65,057.83) Dollars fee retainer received by the Debtor's counsel prior to the commencement of the Debtor's chapter 11 case (the "Case") and Eight Thousand Seven Hundred Eighty–Eight and 04/100 ($8,788.04) Dollars, in addition to the Five Hundred and 00/100 ($500.00) Dollars advance received by the Debtor's counsel prior to the commencement of the case, on account of disbursements to be incurred in connection with the case.

The Fee Reconsideration Motion reiterates the Secured Creditors' concerns voiced in their Objections to the Fee Appli-

cation. Their concerns stem from an interpretation on this Court's Decision which differs from the Debtor's interpretation of same. The confusion lies in a determination as to what the respective dates upon which rents (the "Rents") generated by the Debtor's three hundred (300) condominium apartments (the "Condominiums") became cash collateral as to each of the Secured Creditors.

The Debtor has settled an order seeking to clarify the Decision; the Secured Creditors, in turn, have settled a counter proposed order. The Secured Creditors, however, have urged this Court to refrain from settling an order on the Decision until the Fee Reconsideration motion is considered.

Since the confusion stems from perceived ambiguities in the Decision, this Court will herein revisit said Decision and make necessary clarifications. The Fee Reconsideration Motion, and all responding papers thereto to the extent that they directly address the Fee Reconsideration Motion, shall be considered in reviewing the Decision.

### Discussion

Upon further reflection of the pertinent facts, the law and pursuant to the equitable powers of the bankruptcy court, this Court is compelled to reconsider, *sua sponte*, its previous Decision.

Section 105(a) of the Code grants the bankruptcy court broad equitable powers. The court "may issue any order, process, or judgment ... necessary or appropriate to carry out the provisions of" the Code. 11 U.S.C. § 105(a). The court may also "sua sponte, [take] any action or [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

 The rights of the parties are not hereby prejudiced by this Court's actions today. Although the Decision was issued almost six months ago, an order embodying this Court's ruling was never submitted for settlement by either party for approximately five (5) months and no order was ever entered by this Court. Because no final order was ever signed, the period of time within which to appeal or to file a Rule 59 or 60 motion, pursuant to the Federal Rules of Civil Procedure, never commenced. Moreover, Rule 59 or 60, which set the time period within which to file a motion to reconsider previous orders, is concerned with the finality of orders. *Burnam v. Amoco Container Co.*, 738 F.2d 1230, 1232 (11th Cir.1984); *Taylor v. Lake (In the Matter of Cada Investments, Inc.)*, 664 F.2d 1158, 1162 (9th Cir.1981); *Dow v. Baird*, 389 F.2d 882, 884 (10th Cir.1968). In light of this concern, "courts of equity have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739–40 (9th Cir.1990); *Chinichian v. Compolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir.1986). In the instant case, the rights of the parties have not become vested since this Court's decree in the Decision was never made final.

This Court has carefully reviewed the memoranda of law in support of the Secured Creditors' motion for sequestration of cash collateral and adequate protection, the memoranda of law filed in opposition thereto and the Decision. Pursuant to said review, this Court has decided to go beyond the issue raised in the Secured Creditors' Fee Reconsideration Motion and, *sua sponte*, revisit all of the issues addressed in the Decision. The power to do so is derived from the aforementioned court's *sua sponte* equitable powers expressed in Section 105(a) of the Code. When revisiting the entire Decision, this Court will consider all of the aforementioned documents filed in regards to the Secured Creditors' motion for sequestration of cash collateral and adequate protection since the parties thoroughly researched and lobbied for their respective positions. The extraneous issues raised in the Debtors' responsive papers to the Fee Reconsideration Motion will not be considered by this Court.

The facts in the Decision are incorporated by reference in this decision since said facts have not changed.

In the April 10 Decision, this Court held that "Virginia is in the minority of states

which subscribes to the 'title theory'." *In re Vienna Park Properties*, 112 B.R. 597, 599 (Bankr.S.D.N.Y.1990). This Court went on to hold that the assignment of rent clauses found in the Deeds of Trust constituted an absolute assignment of rents thereby "giving the mortgagee an absolute right to possession of the encumbered property as well as to rents, issues and profits immediately upon default by the mortgagor even though the mortgagor had not taken possession of the property." *Id.* The rentals generated by the property, therefore, were deemed to be the Secured Creditors' cash collateral as of the date of the Debtor's default on the loans.

After a closer look at the operative language found in the Deeds of Trust and in the Virginia law, this Court is compelled to reach a different conclusion.

It is well settled that the determination of the validity of an assignment of rents provision must be decided by reference to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

█ In this case, the issue is whether under Virginia law, the Deeds of Trust created an absolute assignment of rent to the Secured Creditors or whether the language found therein simply further evidenced an intention to create a security interest in the rents. The distinction between the two is crucial. "[I]f an assignment is absolute, the beneficiary of the deed of trust is entitled without further action to all rents accruing from the date of notice of default. If the assignment-of-rents provision is construed as a pledge of the rents as additional security, the rents inure to the [debtor-in-possession] until the [deed of trust] beneficiary protects his [or her] claim to them." *In the Matter of Charles D. Stapp of Nevada, Inc.*, 641 F.2d 737, 739 (9th Cir.1981). When confronted with an assignment-of-rents provision, a court must determine whether the parties intended the clause to be an absolute assignment of rents or merely an assignment for security purposes. *Id.*

The bankruptcy court in *Eastern Savings Bank v. Epco Newport News Associates*, ("*Epco*"), 14 B.R. 990 (Bankr.S.D.N.Y. 1981), in construing Virginia law, reached the conclusion that Virginia was in the minority of states subscribing to the "title theory" of mortgages and deeds of trust. *Id.* at 995. The *Epco* court cited only to a footnote in *Mortgagees Rights to Rents After Default*, 50 Yale L.Rev. at 1425, n. 6 (1941), for authority in reaching its conclusion. *Id.*

The Debtor, however, has made a compelling showing that Virginia prescribes to the lien theory rather than the title theory of mortgages and deeds of trust. *See*, *Interstate R.R. Co. v. Roberts*, 127 Va. 688, 105 S.E. 463 (Va.1920); *Michies Jurisprudence of Virginia and West Virginia, Mortgages and Deeds of Trust*, § 37 (1989). *See also, Gravatt v. Lane*, 121 Va. 44, 92 S.E. 912 (1917). Therefore, despite this Court's strong reliance on the *Epco* decision, there is room to doubt the conclusion in *Epco* that Virginia recognizes the title theory.

The Court of Appeals for the Fourth Circuit has recognized the creation and enforceability of absolute assignment of rent clauses. In *Fidelity Bankers Life Insurance Company v. Williams*, ("*Fidelity*"), 506 F.2d 1242 (4th Cir.1974), the Circuit Court recognized the validity of an absolute assignment of rents and held that pursuant to such an assignment, the mortgagee had an absolute right to possession of the encumbered property as well as to rents, issues and profits immediately upon default by the mortgagor. The *Fidelity* court, however, was merely interpreting and enforcing the operative language in the deed of trust and the supplemental assignment of rents, which did not require the mortgagee to take any affirmative steps to perfect his or her claim for rents. Following suit, the court in *Epco*, held that under the terms of the assignment of rent at issue before it, the creditor was not obligated to take any affirmative action to perfect its absolute rights to rents and profits after the Debtor's default. *Epco*, 14 B.R. at 996.

█ The *Fidelity* and *Epco* decisions, seem to indicate that regardless of whether Virginia is a title theory state or a lien

theory state, if a mortgage or a deed of trust provides for an absolute assignment of rents, such a provision shall be recognized and enforced by the Virginia courts. Moreover, Section 55–59 of the Virginia Code, dealing with the construction of deeds of trust, states that "[e]very deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law...." Va.Code Ann. § 55–59. The applicable provisions of the Virginia Code are controlling when the deeds of trust do not provide otherwise. *Colonial IV. Co. v. Cherrydale Cement Block Co.*, 194 Va. 454, 73 S.E.2d 419 (1952). Therefore, even if the Virginia courts recognize the creation of an absolute assignment of rent, the deed of trust itself must demonstrate an intention to create an absolute assignment. The Ninth Circuit in *In re Charles D. Stapp of Nevada, Inc.*, *supra,* observed that an assignment of rent clause is absolute in nature where the clause used the term assignment without including the words, "as additional security." *Id.* 641 F.2d at 739.

 In the case at bar, the operative language is the following:

"20. Assignment of Rents; Appointment of Receiver; Lender in Possession. *As additional security hereunder,* Borrower hereby assigns to Lender the rents of the Property, provided that the Borrower shall, prior to acceleration under paragraph 18 hereof on abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due...." (Emphasis added).

This language seems to indicate an intention by the parties to include the assignment of rent as additional security interest to the Secured Creditors. This is the creation of a lien in the rental proceeds and not an absolute transfer of title to said rental proceeds. The Secured Creditors' right to collection of the rents is triggered only upon acceleration of the debts and after the Secured Creditors take possession of the property. This is in line with the Virginia cases, cited by the Debtor, which state that a mortgagor must be in possession of the property before it is entitled to collect any rental proceeds which were subject to the mortgagor's lien. *Frayser's Administrator v. Richmond & A.R.R. Co.*, *("Frayser")*, 81 Va. 388 (Va.1866); *Gibert v. Washington City, V.M. & G.S.R.R. Co.* *("Gibert")*, 74 Va. 645 (Va.1881); *Clark v. Curtis ("Clark")*, 42 Va. 289 (Va.1844); *Bank of Washington v. Hupp, ("Hupp")*, 51 Va. 23 (Va.1853). Although not presented with the same facts that are before this Court, the courts in *Frayser* and *Clark* do establish that in Virginia, where a deed of trust or mortgage does not include an absolute assignment of rents clause, the mortgagee must be in possession of the property subject to the lien before he or she can collect the rental income. *Frayser,* 81 Va. at 391; *Clark,* 42 Va. at 297. The court in *Gibert* stated that "so long as the mortgagor is permitted to remain in possession of the property, he is entitled to receive and apply to his own use, the income and profits of the mortgaged estate. And this is true although the mortgage by its terms covers the rents and profits, and although the creditor is authorized to take possession upon default made in the payment of the debt." *Gibert,* 74 Va. at 648.

 The Secured Creditors claim that the above cited assignment of rent clause should be read as providing alternative forms of relief because of the interplay of paragraph 12 of the Deeds of Trust which provides that the remedies provided in the Deeds of Trust are distinct and cumulative and may be exercised concurrently, independently or successively. The Secured Creditors' posit that they did not have to take possession of the property before they became entitled to collect the rental income. This argument does call for a very careful reading of the assignment of rent clause. But, even after such a careful

reading, this Court is not convinced that the operative language was not meant to be construed in the conjunctive.

The Secured Creditors had not, as of the date of the filing of this case, taken all of the required steps to perfect their interest in the rental proceeds. United Postal, by letter dated September 19, 1989, declared an acceleration of the 162 notes held by it, secured by 162 of the Deeds of Trust. This alone, however, as already indicated, was not enough to perfect United Postal's interest in the rental proceeds. Trustbank, on the other hand, does not even assert that it ever sent to the Debtor a formal notice of acceleration. Trustbank claims that the 138 notes held by it were automatically accelerated on June 22, 1989, the date the notes matured. Trustbank's notes, which matured on June 22, 1989, were renewed pursuant to the terms of the notes. Trustbank did not notify the Debtor of a default on the loan until August 10, 1989. This does not demonstrate an intention of Trustbank to deem the notes accelerated by virtue of their maturity on June 22, 1989.

In the event that this Court holds, as it does, that the Secured Creditors were not entitled to collect rents prior to the Debtor's filing of its petition, the Secured Creditors submit that they perfected, post-petition, their interest in the rents pursuant to § 546(b) of the Code. Section 546(b) provides:

> (b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by no-

tice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b).

■ Thus, where state law requires possession in order for a creditor to perfect his/her security interest, section 546(b) allows for post-petition perfection through notice. This section must be read in light of § 362(a) which prohibits the commencement or continuation of any act to obtain possession of property of the estate or any act to create to perfect, or to enforce any lien against property of the estate. While appearing rather clear on its face, the interpretation of the broad language found in section 546(b) has caused a split among the courts.

■ Some courts, including the bankruptcy court in this district, have limited the applicability of § 546(b) to situations where the state law would relate the post-petition act of perfection to a time pre-petition. *Casbeer v. State Federal Savings & Loan Assn., (In re Casbeer)*, 793 F.2d 1436 (5th Cir.1986); *In re Multi–Group III Limited Partnership*, 99 B.R. 5, 6 (Bankr.D. Ariz.1989); *In re Association Center Ltd. Partnership*, 87 B.R. 142 (Bankr.W.D. Wash.1988); *Kearney Hotel Partners v. Richardson (In re Kearney Hotel Partners)* 92 B.R. 95, 105 (Bankr.S.D.N.Y. 1988); *In re TM Carlton House Partners, Ltd.*, 91 B.R. 349, 356 (Bankr.E.D.Pa.1988); *Exchange National Bank v. Gotta (In re Gotta)*, 47 B.R. 198, 202 (Bankr.N.W.Wis. 1985). These courts reach this conclusion pursuant to their reading of the legislative history which seems to support such an interpretation. The legislative history reads in pertinent part:

> If applicable law requires seizure for perfection, then perfection is by notice to the trustee instead. The rights granted to a creditor under this subsection prevail over the trustee only if the transferee was perfected the transfer in accordance with applicable law, and that relates back to a date that is before the commencement of the case.
> The phrase "generally applicable law" relates to those provision of applicable law that apply both in bankruptcy cases and outside of bankruptcy cases. For

example, many state laws, under the Uniform Commercial Code, permit perfection of a purchase-money security interest to relate back to defeat an earlier perfected non-purchase-money security interest if the former was perfected within ten days. UCC § 9–301(2). Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. The purpose of this subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection. It is not designed too [sic] give the states an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6327.

Other courts have held that § 546(b) allows a mortgagee to perfect his/her interest post-petition by the mere act of filing a motion, pursuant to § 546(b), where the state law would allow the mortgagee priority over a lien creditor, without regard to whether the perfection relates back to a time pre-petition. *Consolidated Capital Income Trust v. Colter Inc.*, 47 B.R. 1008, 1011 (D.Colo.1985), aff'g 46 B.R. 510 (Bankr.D.Colo.1984); *In re Gilwicks*, 81 B.R. 445, 448 (Bankr.N.D.Ill.1987); *Chaussee v. Morning Star Ranch Resorts Comp.* (*In re Morning Star Ranch Resorts Comp.*), 64 B.R. 818 (Bankr.D.Colo.1986); *Federal Deposit Ins. Corp. v. Lancaster* (*In re Sampson* ), 57 B.R. 304, 397 (Bankr. E.D.Tenn.1986); *United States v. Farrell* (*In re Fluge* ), 57 B.R. 451, 457 (Bankr.D.N. D.1985).

This Court feels that, in light of the legislative history, the narrower interpretation of § 546(b) is the correct one. This is the logical conclusion when reading § 544 which gives the debtor-in-possession the rights of a judicial lien creditor. The mortgagee's perfection in the rents must relate back to a time before the filing of the bankruptcy petition in order to displace the acquired rights of the debtor-in-possession. The legislative history teaches that the purpose of § 546(b) "is to protect, in spite of the surprise intervention of bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as an effective date that is earlier than the date of the petition." *supra.* This is exactly what is accomplished by reading into § 546(b) a relation back requirement. Where perfection relates back to a time prior to the commencement of the bankruptcy case, the rights of the debtor-in-possession are subject to the more senior pre-petition rights of the mortgagee.

■ Additionally, the more restrictive reading of § 546(b) does not run contrary to § 552(b) which states as follows:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law. . . .

11 U.S.C. § 552(b). This section merely gives effect to the pre-petition interests of a creditor which extend to after-acquired property. If perfection under § 546(b) relates back to a pre-petition event, the rights created are in effect pre-petition rights which may extend to after-acquired property. By contrast, in the instant case, the rights to the rents are not pre-petition but rather are post-petition evidenced by the fact that the Secured Creditors would be entitled to rents as of the date of the filing of its § 546(b) notice. Therefore, the narrower reading of § 546(b) compliments § 552(b).

The question at hand is whether there is a Virginia statute which provides that perfection of the Secured Creditors' rights to the rents relates back to either the execution of the Deeds of Trust or some other

time prior to the filing of the bankruptcy case. The Secured Creditors cite to Virginia case law for the proposition that "perfection relates back to the date of recordation of the deed of trust containing the assignment of rent clause, and will be effective with respect to all rents collected after the required action is taken." (Secured Creditors' Reply Memorandum, at 35). *Frayser, supra; Hupp, supra, Gibert, supra.* As a threshold matter, the Secured Creditors have failed to point to a Virginia state statute in support of its § 546(b) motion. Section 546(b) seems to require a state statute and cases applying that section expressly refer to state statutes. *See In re Prichard Plaza Associates Ltd. Partnership,* 84 B.R. 289, 301 (Bankr. D.Mass.1988), (looking at the Massachusetts statutes). The Secured Creditors, while citing to case law, have not pointed to a Virginia statute which grants priority to a mortgagee over a lien creditor upon the former's perfection of his/her interests in rents. On that deficiency alone, the Secured Creditors' position is defeated. But, despite the aforementioned, this Court's analysis will not end there. The Secured Creditors' have submitted that in Virginia, perfection as to rents relates back to the date of recordation of the Deed of Trust and, thereby, granting the mortgagee on priority over lien creditors. (*See infra* at p. 336–37.)

■ Under Virginia law, the Secured Creditors would become entitled to the rents from the time they acquired possession of the property (*infra* at p. 336–37). Knowing this, the Secured Creditors' claim entitlement to the rents prospectively from the time they filed the § 546(b) notice. The Secured Creditors are asking this Court to make a distinction between the timing of perfection for priority purposes and the timing of perfection for entitlement purposes. The Court in *In re Casbeer, supra,* made this distinction. While holding that perfection under § 546(b) must under state law relate back to a pre-petition event, the Court in *Casbeer* held that the mortgagor had perfected its interest in the rents effective on the date the relevant motion to lift the stay was filed. *Casbeer,* 793 F.2d at

1443. The court observed that while "[t]he perfection of those interests relates back to a time before bankruptcy for the purpose of 546(b); perfection does not relate back to a time before bankruptcy for the purpose of entitlement to rents." *Id.* at 1443. This distinction seems contradictory. If entitlement to the rents is prospective from the time of the filing of the motion, then perfection does not appear to relate back at all. The Court in *In re Prichard Plaza Associates Limited Partnership, supra,* in similarly criticizing the holding in *Casbeer* concluded that "[i]f the particular statute has no retroactive effect, § 546(b) does not apply." 84 B.R. at 301. This Court, like the court in *Prichard Plaza,* feels that the distinction between the timing of perfection for purposes of priority and perfection for purposes of entitlement is a distinction without a difference. The distinction results in discarding the relation back doctrine and allows a creditor to improve his/her security interest post-petition in violation of the automatic stay. Accordingly, the Secured Creditors' claim to entitlement of the rents prospectively as of the filing of the motion for sequestration of the rents is denied.

In any event, contrary to what they would lead this Court to believe, the Secured Creditors' interests will not be left unprotected. The Secured Creditors' perfected security interests in the property (not the rents) is undisputed. Their interests are entitled to protection under section 363 of the Code yet that protection may be achieved without a turnover of the rents as long as there is adequate protection as provided under section 361 of the Code.

The conclusion reached herein makes moot the Fee Reconsideration Motion.

Settle Order in conformance with this Decision on five (5) days notice.