**In re HALL ELMTREE ASSOCIATES, LTD., Debtor.**

**Bankruptcy No. 91–0105–TUC–LO.**

United States Bankruptcy Court, D. Arizona.

March 1, 1991.

Michael Neal, Tucson, Ariz., for debtor.

Clague Van Slyke, Tucson, Ariz., for Olde Salem.

OPINION

LAWRENCE OLLASON, Bankruptcy Judge.

The captioned case came before the court on January 31, 1991, for hearing on the motion of Olde Salem, Ltd., for an order prohibiting the debtor from using alleged cash collateral, being the rents of debtor's apartment building. The motion is based upon a rental assignment given by the debtor to Olde Salem. The question presented is whether the subject rents are cash collateral within the meaning of the Bankruptcy Code.

Under 11 U.S.C. section 363, rents are cash collateral when they are subject to a security interest of an entity other than the bankruptcy estate pursuant to 11 U.S.C. section 552(b). Section 552(b) is an exception to section 552(a). Section 552(a) terminates security interests in after-acquired property. Section 552(b) allows a security interest in rents to continue post-petition "to the extent provided by such security agreement and by applicable non-bankruptcy law...." The Bankruptcy Code thus requires adherence, in this case, to the law of the state of Virginia, where the subject real property is situated.

*In re Vienna Park Properties*, 120 B.R. 332 (Bkrtcy.S.D.N.Y.1990) recently considered the same question presented to this court in the context of Virginia law. Upon careful consideration of the authorities, that court concluded that Virginia is a lien theory state. *Id.* at 336 (citing *Interstate R.R. Co. v. Roberts*, 127 Va. 688, 105 S.E. 463 (Va.1920), *Gravatt v. Lane*, 121 Va. 44, 92 S.E. 912 (Va.1917), and *Michies Jurisprudence of Virginia and West Virginia, Mortgages and Deeds of Trust*, section 37 (1989)). The impact of that conclusion was accurately stated in an ancient Virginia case quoted in *Vienna Park*:

> So long as the mortgagor is permitted to remain in possession of the property, he is entitled to receive and apply to his own use, the income and profits of the mortgaged estate. And this is true although the mortgage by its terms covers the rents and profits, and although the creditor is authorized to take possession upon default made in the payment of the debt. *Gibert v. Washington City*, 74 Va. 645, 648 (Va.1881).

Accord, *Frayser's Administrator v. Richmond & A.R.R. Co.*, 81 Va. 388 (Va.1866); *Bank of Washington v. Hupp*, 51 Va. 23 (Va.1853); *Clark v. Curtis*, 42 Va. 289 (Va.1844).

Notwithstanding that a security interest in rents is excepted from the section 552(a) termination of security interests in after-acquired property, the rents are not cash collateral until Olde Salem's security interest in them is enforced under Virginia law. The enforcement of that interest requires possession of the real property, and acts to gain possession are stayed by 11 U.S.C. section 362(a). Olde Salem must therefore obtain relief from stay to make the rents cash collateral.

The fact that the Bankruptcy Code stays the state law remedy needed to enforce the rental assignment is not inconsistent with the code provision that specifically retains that security interest post-petition. The code stays enforcement of all security interests just as it stays Olde Salem from foreclosing on the subject real property. No one would suggest that a deed of trust does not retain its validity post-petition merely because the lender must obtain stay relief to foreclose. Likewise, the stay of state law requisites to enforcement of a rental assignment does not vitiate the post-petition survival of that security interest under section 552(b).

Olde Salem further contends that its rental assignment is absolute. An absolute assignment would vest title in the assignee, and rents subject to an absolute assignment would not be property of the estate under 11 U.S.C. section 541. *Vienna Park* held that "regardless of whether Virginia is a title theory state or a lien theory state, if a mortgage or a deed of trust provides for an absolute assignment of rents, such a provision shall be recognized and enforced by the Virginia courts." 120 B.R. at 336–37 (relying on *Fidelity Bankers Life Insurance Company v. Williams*, 506 F.2d 1242 (4th Cir.1974). The nature of an assignment turns upon the contract that created it.

The pertinent agreement of the parties, attached to Olde Salem's motion as Exhibit B, entitled "Wraparound Deed of Trust, Assignment of Rents and Security Agreement" ("agreement"), provides in part, at pages 1–3, as follows:

> WHEREAS, Beneficiary, as a condition precedent to the sale of the real estate, has required this Deed of Trust as security.

> \*    \*    \*    \*    \*    \*

NOW THEREFORE, ... the Grantor ... grants to the Beneficiary a security interest in ... [a]ll of the rents, royalties, issues, profits, revenue, income and other benefits hereafter accruing to and arising from the ownership, occupancy, use, possession or enjoyment of all or any part of the Premises or from any lease or other agreement pertaining thereto (collectively the "Rents and Profits") ..., IN TRUST, for the purpose of securing unto the Beneficiary [full compliance by the mortgagor with terms of the note].

The agreement then states that upon satisfaction of those obligations, the property will be released and reconveyed to the debtor, thereby terminating the assignment. At pages 11–12, the agreement contains the following additional provisions:

2.01  Assignment of Rents.... The assignment of the rents ... is intended to be an absolute assignment from the Grantor to the Beneficiary and not merely the passing of a security interest. The rents ... are hereby assigned absolutely by the Grantor to Beneficiary contingent only upon the occurrence of an event of default under any of the Loan Instruments. At Beneficiary's request, Grantor shall execute a separate document evidencing this Assignment of Rents.

2.02  Collection Upon Default. Upon any event of default ..., Beneficiary may ... enter upon and take possession of the Premises, ... sue for or otherwise collect such rents ..., and apply same ... upon any indebtedness secured hereby....

2.03  Assignment of Leases. Grantor agrees to assign and transfer to Beneficiary as additional security for the payment of the indebtedness secured hereby, all present and future leases...."

The language "as additional security" indicates an intention to give an assignment of rents as security in addition to that provided by the improved real property. *Vienna Park*, 120 B.R. at 337; *In the Matter of Charles D. Stapp of Nevada, Inc.*, 641 F.2d 737, 739 (9th Cir.1981). The language before this court as above set forth is evidence of the intent of the parties

and of their contractual undertaking. Section 2.01 clearly sets forth an intention that the assignment of rents be absolute. However, the intent of the parties is not to be discerned from section 2.01, but instead from their entire agreement. A clause is not a contract, and that which is absolute is not conditional.

The agreement presently at issue contains numerous indicia that the rental assignment was given as security rather than as an absolute transfer of title. The parties call it a security agreement and state that it was required by the lender for security. The agreement contemplates a separate instrument to evidence the assignment of rents, but no such document has been submitted to this court. The agreement purports to grant a security interest in, among other things, the rents, in order to secure payment on the note. Once the note is paid in full, the assignment terminates. Unless the note is in default, the assignment is inoperative. The leases from which the rents are derived are assigned specifically "as additional security." Upon default, the agreement allows the lender to collect the rents in conjunction with possession of the property. And the note itself (Exhibit A to Olde Salem's motion) makes no greater claim:

This note is secured, among other things, by a certain Wraparound Deed of Trust, Assignment of Rents and Security Agreement of even date herewith....

Taken in its entirety, the agreement carefully creates nothing more than a security interest in the rents of the apartment building. Section 2.01 is merely a retrominjet clause that would soil the obviously contrary contractual undertaking manifested throughout the agreement. It takes the form but lacks the substance of an absolute assignment. Until the mortgage payments stop coming in, the mortgagee is not interested in the duties and liabilities associated with actually collecting the rents. The intent of the parties was to secure performance on the note with an assignment of rents, but not to pass title to those rents. The assignment was termed "absolute" in hopes of having it both ways. Accordingly, the clause will not be enforced

as urged by Olde Salem and the result here will be the same as the result in *Vienna Properties:*

> This is the creation of a lien in the rental proceeds and not an absolute transfer of title to said rental proceeds. The Secured Creditors' right to collection of the rents is triggered only upon acceleration of the debts and after the Secured Creditor takes possession of the property. This is in line with the Virginia cases ... which state that a mortgagor must be in possession of the property before it is entitled to collect any rental proceeds which were subject to the mortgagor's [sic] lien. 120 B.R. at 337.

■ Of course, rents that are not cash collateral are nevertheless subject to the jurisdiction of this court and to the fiduciary duty owed to creditors by the debtor-in-possession. Accordingly, the court will enter an order denying the motion, but requiring the debtor to sequester and account for the rents and to obtain an order for expenditures outside the ordinary maintenance and management of the subject property.